BUCHALTER
A Professional Corporation
DOUGLAS E. WANCE (SBN: 010144)
MATTHEW L. SEROR (*pro hace vice* application to be filed)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: mseror@buchalter.com

BUCHALTER
A Professional Corporation
SANJAY BHANDARI (*pro hace vice* application to be filed)
655 W Broadway Suite 1600
San Diego, CA 92101
Telephone: (619) 219-5335
Facsimile: (619) 219-5344
Email:  sbhandari@buchalter.com

Attorneys for Plaintiff
TWINS SPECIAL CO., LTD.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF HAWAII**

| | |
|---|---|
| TWINS SPECIAL CO., LTD., a private limited company organized under the laws of Thailand,<br><br>Plaintiff,<br><br>vs.<br><br>TWINS SPECIAL, LLC, NICHOLAS MECHLING, an individual and CHRISTOPHER MECHLING, an individual, DOES 1-10, inclusive,<br><br>Defendants. | **COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Twins Special Co., Ltd. ("Plaintiff"), by and through its attorneys, brings this action against Defendants Twins Special, LLC ("Twins USA"), Nicholas Mechling ("N. Mechling") and Christopher Mechling ("C. Mechling") (Twins USA, N. Mechling and C. Mechling are collectively referred to herein as the "Defendants"), and alleges as follows:

## THE PARTIES

1. Twins Thailand is a private limited company organized under the laws of Thailand and based in Thailand. Twins Thailand manufactures and sells boxing gloves, boxing gear and martial arts equipment in the fields of both traditional Western boxing and "Muay Thai" which is also known as "Thai Boxing."

2. Defendant Twins USA is a California limited liability company organized and existing under the laws of the state of California. Plaintiff is informed and believes, and on that basis alleges, that Twins USA was formed, and is now being operated by C. Mechling and N. Mechling while they remain domiciled in Honolulu County, Hawaii.

3. Plaintiff is informed and believes, and on that basis alleges, that Defendant C. Mechling is a United States citizen and is domiciled in Honolulu County, Hawaii. Plaintiff is further informed and believes, and on that basis alleges that at the time the events giving rise to the claims alleged herein occurred, C. Mechling was domiciled in Honolulu County, Hawaii.

4. Plaintiff is informed and believes, and on that basis alleges, that Defendant N. Mechling is a United States citizen and is domiciled in Honolulu County, Hawaii. Plaintiff is further informed and believes, and on that basis alleges that at the time the events giving rise to the claims alleged herein occurred, N. Mechling was domiciled in Honolulu County, Hawaii.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338, and the Lanham Act, 15 U.S.C. §§ 1051, 1119, *et seq*. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367. Alternatively, diversity jurisdiction also exists.

6. The Court has personal jurisdiction over the Defendants because each has substantial contacts with this judicial district. Based on Plaintiff's information and belief, Defendants N. Mechling and C. Mechling are domiciled in this judicial district. Plaintiff is further informed and believes that N. Mechling and C. Mechling are operating Twins USA from this judicial district. Finally, the acts undertaken as alleged herein are believed to have been undertaken by the Defendants while in this judicial district.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged herein, specifically the actions of the Defendants relating to the misrepresentations made by the Defendants and the actions of the Defendants as alleged herein occurred while they were located in this judicial district.

## BACKGROUND FACTS

8. Twins Thailand is the undisputed owner of the TWINS SPECIAL, KING and KING PROFESSIONAL trademarks (the "Marks") in Thailand in connection with boxing gloves, boxing gear and martial arts equipment. Twins Thailand manufactures goods sold under the foregoing trademarks worldwide, and has done so since these marks were first used in commerce. Some of the goods sold by Twins Thailand to customers in Thailand end up being offered for sale to consumers in the United States and other countries around the world.

9. Plaintiff first began manufacturing its boxing and martial arts equipment in the 1980s and commenced use of the TWINS SPECIAL trademark for such goods in 1992. Plaintiff commenced use of the KING and KING PROFESSIONAL marks in or around 2011.

10. Following its first use of the TWINS SPECIAL mark, Plaintiff created numerous logos and other graphic depictions of the TWINS SPECIAL mark for use on and in connection with its goods, including the following:



11. Plaintiff's products are known throughout the world for their superior craftsmanship and quality, and that is one of the reasons the products are so popular within the relevant boxing community. Plaintiff's products sold under the Marks have generated millions of dollars of sales and the Marks have gained recognition amongst consumers due to the high quality of the goods. Plaintiff's products have achieved prominence throughout the world, including in the United States.

12. In June 2010, and then again in February 2013, the Defendants convinced the Plaintiff to sign certain English language documents relating to the

Marks, the registration and ownership of the Marks by a yet-to-be-formed California limited liability company (Twins USA), and the proposed ownership structure of that entity. Plaintiff contends that the Defendants made numerous material misrepresentations to the Plaintiff in connection with these two agreements.

13. At or about the time the June 2010 agreement was signed, Twins USA began acting as Plaintiff's United States distributor for Plaintiff's products sold under the Marks. Twins USA also applied for and received certain United States trademark registration for the Marks.

14. For a time, the parties continued to do business with each other, with Plaintiff selling goods bearing the Marks to Twins USA and/or the Defendants for sale in the United States. Plaintiff would also sell goods that it manufactured bearing the Marks to its other customers. Plaintiff is informed and believes, and on that basis alleges, that some of the goods sold to other customers would occasionally be offered for sale and sold in the United States in the ordinary course of commerce.

15. Unbeknownst to Plaintiff, in March 2017, Twins USA granted to C. Mechling and N. Mechling the exclusive right to use, enforce and sublicense the intellectual property of Twins USA, which the Defendants contend includes the Marks and other intellectual property.

16. In or about 2020, the relationship between Plaintiff, on the one hand, and the Defendants, on the other hand, soured. This was due in part to Twins USA's inability or unwillingness to comply with the payment terms required by Plaintiff for future orders. Then, in early 2021, Plaintiff discovered the material misrepresentations made by Defendants to Plaintiff in connection with the 2010 and 2013 agreements.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 69361808v2

17. Due to the ongoing dispute between the parties, in or about August 2021, Defendant began making statements to customers of Plaintiff, and potentially others, that the goods being sold by Plaintiff's customers infringed upon Defendant's trademark rights and/or were counterfeit.

18. In addition, Defendants lodged take down notices with various third parties, including but not limited to Facebook and Instagram, wherein Defendants contended that products being sold or displayed on those platforms violated Defendants' trademark rights and/or were counterfeit.

19. Plaintiff is informed and believes, and on that basis alleges, that at the time Defendants engaged in the above-referenced conduct, Defendants knew that the goods being targeted by Defendants' take down notices were genuine goods manufactured and sold by Plaintiff.

20. Despite Defendants' allegations to the contrary, because the goods targeted by Defendants were identical to the goods being sold by Defendants (all of the goods were being manufactured by Plaintiff) and were originally sold by Plaintiff, those sales were lawful.

21. In or about February 2022, and due to the ongoing dispute with Plaintiff, Defendants began acquiring goods bearing the Marks not from Plaintiff, but rather from a third party manufacturer, and began selling those goods to consumers.

22. From the time that Twins USA first began serving as Plaintiff's United States distributor for the products sold under the Marks until Defendants began acquiring the goods from other sources, Plaintiff served as Twins USA's exclusive supplier of boxing gear and equipment bearing the Marks. Plaintiff is informed and believes, and on that basis alleges, that prior to approximately February 2022, every product sold by the Defendants bearing the Marks originated from Plaintiff.

23. Plaintiff is informed and believes, and on that basis alleges, that by February 2022, when Defendants began selling the goods manufactured by an entity other than Plaintiff, Defendants no longer had any inventory of goods made by Plaintiff.

24. In and after February 2022, and despite the fact that it no longer had any goods manufactured by Plaintiff in its possession, Defendants continued to make representations that the goods they selling, that were manufactured by a third party manufacturer, originated from the Plaintiff.

25. Defendants' website ([www.twinsfight.com](www.twinsfight.com)) offered Defendants' goods for sale and continued to prominently discuss the rich history of Plaintiff and the tremendous goodwill it enjoys. While this was not Defendants' history or legacy, Defendants were using it to falsely represent to consumers that the goods Defendants are selling originate from Plaintiff and are "hand-crafted" in Thailand. This representation is false, misleading and likely to deceive consumers.

26. Defendants' website also included references to certifications that Plaintiff's goods had received from various regulatory bodies. Plaintiff is informed and believes, and on that basis alleges, that Defendants' products did not have those certifications, and therefore this was a further attempt to confuse and deceive customers as to the source of Defendants' product.

27. In addition, Defendants' continue to feature other promotional materials related to Plaintiff, including a promotional video featuring Plaintiff's products. Defendants' continued use of these materials misrepresents the source of the goods Defendants are now selling, suggests an affiliation, sponsorship or approval of Defendants' products by Plaintiff' and seeks to pass off the goods being sold by Defendants as Plaintiff's goods.

# FIRST CLAIM FOR RELIEF

## (False Designation of Origin)

28. Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations in all prior and subsequent paragraphs.

29. In connection with the Defendants' sale of its products bearing the Marks, Defendants utilize false designations of origin and false and misleading descriptions of fact related to the source of the goods being sold and their association with the Plaintiff.

30. Defendants' use of false designations of origin and false and misleading descriptions of fact is likely to cause confusion and to deceive consumers as to the affiliation, connection or association of Defendants with Plaintiff.

31. Defendants' use of false designations of origin and false and misleading descriptions of fact is also likely to cause confusion and to deceive consumers as to the origin, sponsorship or approval of Defendants' goods by Plaintiff.

32. Defendants' false designations of origin and false and misleading descriptions of fact appear in the commercial advertising and promotion of its goods, and misrepresent the characteristics, qualities and geographic origin of its products.

33. By reason of the foregoing, Defendants are liable to Plaintiff for: (a) an amount representing Plaintiff's damages; (b) Defendants' profits; and (c) reasonable attorneys' fees, costs including investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### (Cancellation of Registrations-Fraud)

34. Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations in all prior and subsequent paragraphs.

35. On August 25, 2010 and August 26, 2010, Defendant filed applications for the following marks in the United States:

| Mark | Registration No. | Goods | Claimed Date of First Use |
|---|---|---|---|
| TWINS SPECIAL | 4,848,711 | Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic protective pads for chest, abdomen, belly, shins and head for use with martial arts; punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any other sports or sports team, league, mascot or | February, 2003 |

| | | | |
|---|---|---|---|
| | | stadium | |
| | 4,848,712 | Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic protective pads for chest, abdomen, belly, shins and head for use with martial arts; punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any other sports or sports team, league, mascot or stadium. | February, 2006 |
| | 4,848,713 | Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic | February, 2003 |

| | | |
|---|---|---|
| | | protective pads for chest, abdomen, belly, shins and head for use with martial arts; punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any other sports or sports team, league, mascot or stadium. | |

36. Each of the applications filed by Twins USA in 2010 includes a date of first use of February 2003 and February 2006. These dates are prior to the formation of Twins USA. In fact, the relied upon dates of first use are actually the dates of first use of the Marks by Plaintiff in the United States.

37. On July 6, 2009, third party Booster Budo & Fitness B.V.B.A. filed a trademark application for the following mark in the United States:

| Mark | Registration No. | Goods | Claimed Date of First Use |
|---|---|---|---|
| KING | 3,749,271 | boxing shorts; caps; t-shirts; tank tops; sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards | June, 2008 |

38. U.S. Trademark Registration No. 4,848,711 (TWINS SPECIAL); Registration No. 4,848,712 (TWINS SPECIAL and Design Mark); Registration No. 4,848,713 (TWINS SPECIAL and Design Mark); and Registration No. 3,749,271 (the KING and Design Mark) shall collectively referred to as the "Registrations".

39. In connection with the trademark applications for the Marks filed in 2010 by Twins USA, and the application filed by Booster Budo & Fitness B.V.B.A. in 2009, Twins USA and Booster Budo & Fitness B.V.B.A. stated, under penalty of perjury, that "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."

40. Plaintiff is informed and believes, and on that basis alleges, that at the time Twins USA made the foregoing representation to the U.S. Trademark Office, that representation was inaccurate in that Twins USA was aware of Plaintiff's rights in the mark which were the subject of the applications, knew that Plaintiff retained all rights to the applicable marks in Thailand, and knew that Plaintiff was continuing to sell products bearing the marks in the United States.

41. Plaintiff is informed and believes, and on that basis alleges, that at the time Booster Budo & Fitness B.V.B.A. made the representations set forth in Paragraph 37 herein to the U.S. Trademark Office, that representation was inaccurate in that Booster Budo & Fitness B.V.B.A. was aware of Plaintiff's rights in the mark which was the subject of that application, knew that Plaintiff owned all rights to the applicable mark, and knew that Plaintiff was continuing to sell products bearing the applicable mark in the United States.

42. Plaintiff is informed and believes, and on that basis alleges, that during the prosecution phase of the Registrations, Twins USA presented Wikipedia evidence that obviously referenced Plaintiff but Twins USA made it appear that the reference was to themselves. Moreover, Twins USA not only included this deceptive information in its response, it also did nothing to correct the records of the U.S. Patent and Trademark Office and caused the U.S. Trademark Office to rely on this evidence and the statements of ownership (which was given under penalty of perjury). Such deceptions and misrepresentations resulted in the fraudulent issuance of registrations for the Marks by Twins USA

43. Registration No. 3,749,271 was assigned to Twins USA by Booster Budo & Fitness B.V.B.A. on or about October 3, 2011.

44. On or about November 10, 2021, Twins USA filed a Section 8 and 15 Declaration of Use and Incontestability in connection with Registration Nos. 4,848,711, 4,848,712, and 4,848,713.

45. On August 19, 2019, Twins USA filed a Section 8 and 15 Declaration of Use and Incontestability in connection with Registration No. 3,749,271 and then filed a Petition to the Director to reinstate a cancelled registration in connection with the same registration on August 20, 2020.

46. In connection with Section 8 and 15 Declarations of Use and Incontestability filed by Twins USA, it submitted to the U.S. Trademark Office affidavits wherein Twins USA stated, under penalty of perjury, the following

multiple fraudulent statements: "Unless the owner has specifically claimed excusable nonuse, the mark is in use in commerce on or in connection with the goods/services…."; "The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under 15 U.S.C. 1062(c), and is still in use in commerce on or in connection with all goods/services…"; and "There is no proceeding involving said rights pending and not finally disposed of either in the United States Patent and Trademark Office or in court."

47. Plaintiff is informed and believes, and on that basis alleges, that at the time Twins USA made the foregoing representations in its Section 8 and 15 filings, the representations contained therein were not accurate and that Twins USA knew that they were not accurate. Specially, Plaintiff is informed and believes, and based thereon alleges, that at the time Twins USA made these representations, it was no longer using the Marks in commerce and at least one third party had challenged Twins USA's claim of ownership in the Marks. Despite its knowledge as to these matters, Twins USA concealed the true facts from the U.S. Trademark Office for the purpose of obtaining its Section 8 and 15 renewal.

48. The U.S. Trademark Office reasonably relied on the accuracy of the foregoing representations made by Twins USA (and its predecessor) when it granted the Registrations, and the Acceptance and Acknowledgment of the Section 8 and 15 Declaration in connection with Registration 3,749,271, and will be relying on these misrepresentations if it grants the Acceptance and Acknowledgement of the Section 8 & 15 Declarations in connection with Registration Nos. 4,848,711, 4,848,712, 4,848,713.

49. Because the Registrations were obtained by fraud, and the statements provided to the U.S. Trademark Office in connection with 4,848,711, 4,848,712, 4,848,713 and 3,749,271 are fraudulent, the Registrations are subject to cancellation at any time pursuant to 15 U.S.C. § 1064(3).

50. Plaintiff has been damaged, and will continue to be damaged, by the continued registration of the Registrations.

### THIRD CLAIM FOR RELIEF
### (Cancellation of Registrations-Misrepresentations)

51. Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations in all prior and subsequent paragraphs.

52. In connection with its offering for sale, and sale of its products, Defendants utilize false designations of origin and false and misleading descriptions of fact related to the source of the goods being sold and their association with the Plaintiff.

53. Defendants' use of false designations of origin and false and misleading descriptions of fact is likely to cause confusion and to deceive consumers as to the affiliation, connection or association of Defendants with Plaintiff.

54. Defendants' conduct amounts to a "passing-off" of Defendants goods as goods originating from Plaintiff.

55. The misrepresentations by Defendants as to the source of its goods mandate the cancellation of the Marks pursuant to 15 U.S.C. § 1064(3).

### FOURTH CLAIM FOR RELIEF
### (Intentional Interference With Prospective Economic/Contractual Relations)

56. Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations in all prior and subsequent paragraphs.

57. Plaintiff has long-standing and established relationships with its customers, who purchase products from Plaintiff for ultimate re-sale to end consumers. These relationships provide Plaintiff with a continuous prospective benefit in the form of continued sales. There was at all times a reasonable probability that these relationships would continue to result in future economic benefit to the Plaintiff.

58. Defendants were well aware of Plaintiff's relationships with its customers and the likelihood of the continuous economic benefit that would result from those relationships as a result of Defendants' dealings with Plaintiff.

59. Notwithstanding Defendants' knowledge of Plaintiff's relationship with its customers, and the significant economic benefit enjoyed by Plaintiff as a result of those relationships, Defendants engaged in conduct which damaged those relationships.  Specifically, Defendants told Plaintiff's customers, and others, that the goods that the Plaintiff's customers had purchased from Plaintiff were infringing and counterfeit and threatened legal action if Plaintiff's customers continued to sell the goods obtained from Plaintiff.

60. In addition, Defendants took action to remove or disable certain sales listings, social media accounts and other online materials related to the sale of genuine productions manufactured and sold by the Plaintiff.

61. Plaintiff is informed and believes, and on that basis alleges, that in engaging in this conduct, Defendants intended to disrupt Plaintiff's relationships with its customers and/or knew that a disruption to those relationships was likely as a result of Defendants' conduct.

62. Plaintiff's relationships with its customers were harmed and disrupted as a result of Defendants' conduct and that disruption materially harmed Plaintiff. Plaintiff has suffered damages in an amount to be proven and trial but which is no less than $2,000,000 as a result of Defendants' conduct, including no less than $70,000 which Plaintiff was forced to refund to its customers as a result of Defendants' conduct.

63. Defendants' conduct was a substantial factor in causing Plaintiff's harm and the disruption of its relationships with its customers.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment in its favor providing the following relief:

1. That the Court enter an injunction pursuant to the Lanham Act ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them, be enjoined from using a false designation of origin or description, including by words or other symbols, tending to falsely describe or represent that Defendants' goods as being those of Plaintiff, of that they are affiliated, sponsored or approved by Plaintiff;

2. That Defendants be required to account to Plaintiff for all of Plaintiffs' damages resulting from Defendants' false designations of origin and false and misleading descriptions of fact undertaken in connection with the offering for sale, sale, promotion, or marketing of goods under the Marks;

3. That Defendants be required to account to Plaintiff for all profits resulting from Defendants' false designations of origin and false and misleading descriptions of fact undertaken in connection with the offering for sale, sale, promotion, or marketing of goods under the Marks;

4. For an order directing the United States Patent and Trademark Office to cancel the Registrations based on the material misrepresentations made to the U.S. Patent and Trademark Office during the prosecution and renewal of the Marks;

5. For an order directing the United States Patent and Trademark Office to cancel the Registrations based on the material misrepresentations made by the Defendants as to the origin of the goods being sold under the Marks;

6. That Plaintiff recover from Defendants the damages caused by Defendants' interference with Plaintiff's economic and contractual relations;

7. That Plaintiff recover from Defendants the costs and disbursements of this action in addition to reasonable attorney and investigator fees and pre-judgment interest pursuant to 15 U.S.C. § 1117;

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 69361808v2

8. That Plaintiff be awarded punitive damages for Defendants' willful and malicious acts of making false designations of origin and false descriptions and representations so as to deter Defendants' future unlawful activities as complained of herein;

9. That this Court retain jurisdiction over this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and enforcement of any Order entered in this action, for the modification of any Order, and for the enforcement or compliance therewith and for punishment of any violations thereof; and

10. For such other and further relief as the Court may deem just and proper.

Dated: March 22, 2022

BUCHALTER
A Professional Corporation

By: _____/s/ Douglas E. Wance_____
DOUGLAS E. WANCE
MATTHEW L. SEROR
Attorneys for Plaintiff
TWINS SPECIAL CO., LTD

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues in the Complaint that are triable by jury.

Dated: March 22, 2022

BUCHALTER
A Professional Corporation

By: /s/ Douglas E. Wance
DOUGLAS E. WANCE
MATTHEW L. SEROR
Attorneys for Plaintiff
TWINS SPECIAL CO., LTD