Matthew M. Mahoney, Esq. (SBN 211184)
Mary K. Wyman, Esq. (SBN 260104)
WITHAM MAHONEY & ABBOTT, LLP
401 B Street, Suite 2220
San Diego, California 92101
Telephone (619) 407-0505
E-Mail:      mahoney@wmalawfirm.com
             wyman@wmalawfirm.com

Attorneys for Defendants TWINS SPECIAL,
LLC, NICHOLAS MECHLING, and
CHRISTOPHER MECHLING

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWINS SPECIAL CO. LTD, a private limited company organized under the laws of Thailand,<br><br>               Plaintiffs,<br><br>    vs.<br><br>TWINS SPECIAL, LLC, NICHOLAS MECHLING, an individual, CHRISTOPHER MECHLING, an individual, TWINS SPECIAL, an unincorporated general partnership, and DOES 1-10, inclusive,<br><br>          Defendants. | Case No. 3:23-cv-00223-JO-DDL<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      April 10, 2023<br>Time:     TBD<br>Dept:     Courtroom 12B |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................6

STATEMENT OF FACTS .................................................................................7

    A.    Plaintiff and the Mechlings Long-Standing Business Relationship ...............7

    B.    As Part of the 2010 Assignment, Plaintiff Assigned to Twins LLC all of the Intellectual Property Associated with Its TWINS and KINGS Muay Thai Equipment, Which Included Designs Appearing Similar or Identical to the Claimed Copyrighted Designs. ........................................................................8

    C.    The 2013 Agreement ........................................................................................9

    D.    The 2017 Agreement ......................................................................................10

    E.    Defendants' Enforcement Actions to Stop Plaintiff's Unlawful Sale of Goods...............................................................................................................11

    F.    Plaintiff's Two Related Cases: The *Pouliot v. Mechling* Action Pending in the Southern District of California and the Related *State Court Action* in San Diego Superior Court ......................................................................................12

    G.    The Instant Action .........................................................................................13

LEGAL ANALYSIS..........................................................................................13

    A.    Plaintiff Has Failed to Submit any Credible Evidence Demonstrating a Likelihood of Prevailing on the Merits of Its Claim of Copyright Infringement. ..................................................................................................14

    1.    Plaintiff Has Submitted no Evidence Supporting Its Claim of Ownership of the Copyrighted Works. ...................................................................................15

    2.    Evidence Exists to Demonstrate Defendants Acquired the Right to Use the Tattoo, Wolf, Cobra, Dragon and Naga Designs in 2010. .............................16

    B.    Plaintiff Has Failed to Establish it is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief. ....................................................................17

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1. Plaintiff Has Failed to Produce Any Actual Evidence Beyond Conclusory Declarations in Support of its Claim of Irreparable Harm...........................17

2. Plaintiff's Knowledge of Defendants' Sale of the Alleged Copyrighted Products for Years Belies the Assertion of Imminency of Harm. ...............20

C. Plaintiff Has Failed to Establish the Balance of Hardships Weighs in Favor of Imposing a Preliminary Injunction. ...........................................20

D. Plaintiff Has Failed to Establish the Preliminary Injunction is in the Public Interest. ..................................................................................21

E. In the Event that the Court Grants the Preliminary Injunction, Defendants Request the Issuance of a Bond..................................................22

IV. CONCLUSION..............................................................................23

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir.2001)...........................................14

*American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470 (9th Cir.1985) .....................................................................................................19

*Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181 (C.D. Cal.)..................................21

*Arenas v. Shed Media US, Inc.*, 462 Fed.Appx. 709 (9th Cir. 2011) ................................21

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) .........................17

*Collins v. United States Dep't of Veterans Affs.*, No. 3:19-CV-00867-H-MSB, 2020 WL 133889, at *3 (S.D. Cal. Jan. 13, 2020)...................................................................19

*Coyne–Delaney Co. v. Capital Dev. Bd.,* 717 F.2d 385 (7th Cir.1983) ............................23

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612 (9th Cir. 2010) ....................14

*Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957 (C.D. Cal. 2016) 17, 20, 21

*Dotster, Inc. v. Internet Corp. For Assigned Names & Numbers*, 296 F. Supp. 2d 1159, (C.D. Cal. 2003)............................................................................................18

*Edgar v. MITE Corp.,* 457 U.S. 624 (1982) .......................................................22

*Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101 (N.D. Cal. 2010).................21

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir. 1997)...........................................................................................15

*E–Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir.1983)......................................21

*Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366 (9th Cir. 2016)...........................19

*Fox Television Stations, Inc. v. BarryDriller Content Sys.*, PLC, 915 F. Supp. 2d 1138 (C.D. Cal. 2012)....................................................................................21, 22

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ..............................................21, 22

*Garrett v. City of Escondido,* 465 F.Supp.2d 1043 (S.D.Cal.2006)..................................22

*Goldie's Bookstore, Inc. v. Sup. Ct.*, 739 F.2d 466 (9th Cir.1984)..................................19

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, (9th Cir. 2013)....................................................................................17, 19

*Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389 (9th Cir. 2015) ...................... 19

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ....................................................... 14

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) .......................................................... 14

*Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032
  (9th Cir. 1994) ..................................................................................... 22

*Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374 (9th Cir. 1985) ........................... 20

*Overman v. Loesser*, 205 F.2d 521 (9th Cir. 1953) ................................................. 16

*Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011 ................................. 13, 14

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ..................................... 15

*Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068 (S.D. Cal. 2019) ........... 22

*Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330 (9th Cir. 1995) ................................ 21

*Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011) .......... 21

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) ....................... 13, 14, 20, 21, 22

*Yes on Prop B v. City and County of San Francisco*, 440 F.Supp.3d 1049 (N.D. Cal.
  2020), 1060 ........................................................................................ 19

**Rules**

Fed.R.Civ.P. 65(c) ...................................................................................... 22

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION

Defendants Twins Special, LLC ("Twins LLC"), Nicholas Mechling ("Nicholas"), and Christopher Mechling ("Christopher") (collectively, "Defendants"), by and through their attorneys of record, hereby respectfully submit this Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction, and allege as follows:

## **INTRODUCTION**

Plaintiff's Motion for Preliminary Injunction (the "Motion") is only the latest part of an ongoing and systematic effort by Plaintiff, a factory in Thailand and its family of owners, to unwind a deal it made with Defendants almost 13 years ago. At various times in the past, Plaintiff and Defendants were engaged in the sale of Muay Thai boxing equipment under the TWINS and KING brands. In 2010, Plaintiff assigned all of its interests in the intellectual property relating to the brands to Defendant, Twins Special, LLC. Although Plaintiff retained an interest in Twins Special, LLC at that time, in 2013, it divested itself of any interest in the company such that Defendants Nicholas and Christopher Mechling were the sole owners.

In the ten years since, Defendants have retained the sole right to sell the TWINS and KING branded products. Despite that fact, Plaintiff has completely ignored the 2010 Assignment and routinely engaged in the unauthorized sale of non-genuine TWINS and KING products throughout the world. Consequently, Defendants have been forced to file several federal court actions to obtain judgments shutting down the unlawful retailers that have been supplied by Plaintiff with these unauthorized, nongenuine goods.

The current lawsuit is yet another attempt by Plaintiff to disregard the agreements by which it gave up its rights to the TWINS and KING brands, and this Motion is part of that strategy. Nevertheless, the absence of any true evidence, beyond self-serving declarations by Plaintiff's principals, demonstrates the lack of merit underlying the Motion.

Plaintiff seeks to enjoin the sales of what it claims to be **unregistered** copyrighted designs. But its claims directly contradict the 2010 Assignment. More importantly, Plaintiff has not even attempted to meet its burden of establishing ownership of the designs

to which it contends it has a protected copyright interest.  Furthermore, Plaintiff's Motion glosses over the fact that for at least four years, Defendants' have been openly selling the alleged infringing products on its sublicensees' websites, yet only now does Plaintiff claim it is in imminent danger of irreparable harm.  That claim is not substantiated by **any evidence**.  Thus, Plaintiff has totally disregarded its burden to produce evidence in support of this "extraordinary measure" of a preliminary injunction.

Therefore, Defendants respectfully request that the Court deny the Motion.

## STATEMENT OF FACTS

**A.    Plaintiff and the Mechlings Long-Standing Business Relationship**

Plaintiff is a Thailand-based factory that originally created brands of boxing gear and martial arts equipment under the trademarks TWINS SPECIAL and KING PROFESSIONAL ("TWINS and KING") (the "Trademarked Goods").  The Mechlings have shared a longstanding business relationship with Plaintiff. Commencing in or around 2009, the Mechlings and Plaintiff entered into a series of international commercialization agreements involving the sale and distribution of the Trademarked Goods.  Declaration of Nicholas Mechling in Support of Defendants' Opposition to Motion ("Mechling Decl."), ¶ 2.

In or around 2010, the Mechlings agreed to organize Defendant Twins Special LLC, a limited liability company organized under the laws of California and located in San Diego County ("Twins LLC").  Twins LLC was created to own, hold, license, and enforce the global intellectual property rights of the TWINS and KING brands. Pursuant to the 2010 Agreement, Twins LLC was owned 50% by Plaintiff, 40% by the Mechlings, with the remaining 10% interest held by Paveenvat Wongprasertkarn ("Wongprasertkarn"), the son of Plaintiff's founders.  Mechling Decl., ¶ 3.

All of Plaintiff's intellectual property rights related to the TWINS and KING brands and all common law rights therein in all countries, excluding certain existing Thai trademarks, that were transferred and assigned together with the goodwill to Twins LLC (the "2010 Assignment"). Mechling Decl., ¶ 5.  The website, twinsspecial.com, was also

assigned to Twins LLC at this time, which Defendants developed into a popular international brand website. Mechling Decl., ¶ 6.

During the following years, the Mechlings conducted business with Plaintiff through Twins LLC, and the TWINS and KING brands gained significant traction in the worldwide market as two of the most highly regarded and reliable products in the industry. Since its founding, Twins LLC has worked to cultivate the TWINS and KING brands throughout the world, and relied for many years on Plaintiff as its contract manufacturer for Twins LLC's highly regarded and sought-after TWINS and KING products. Mechling Decl., ¶ 7.

**B.** **As Part of the 2010 Assignment, Plaintiff Assigned to Twins LLC all of the Intellectual Property Associated with Its TWINS and KINGS Muay Thai Equipment, Which Included Designs Appearing Similar or Identical to the Claimed Copyrighted Designs**

Pursuant to the 2010 Assignment of intellectual property from Plaintiff to Twins LLC in 2010, Plaintiff assigned all of the intellectual property associated with the TWINS and KINGS brands, which included the designs that were, at that time, appearing on the equipment that had previously been sold by Plaintiff. Mechling Decl., ¶¶ 3-5. As of 2010, and for years prior thereto, Plaintiff published a customer catalogue of its equipment for purposes of marketing and sales. Mechling Decl., ¶ 18. All of the equipment and the designs related thereto in the Catalogue were part of the Assignment in 2010 (as were other additional products not appearing in the Catalogue). Mechling Decl., ¶¶ 3-5, 18-24.

The equipment that was part of the assignment included, among other things, Muay Thai boxing gloves, shorts, and shin guards. At the time of the 2010 Assignment, the TWINS brand was historically developed with a signature design, such as a dragon, for one type of goods (gloves, shorts, shin guards, etc.) and applying variations of that design to other types of goods such that customers could buy complete kits with matching dragon designs (or other designs) on all of their equipment and apparel.

Signature designs were not always duplicated exactly from one product to another, but adapted or in some cases reimagined, but key concepts would carry over, and over time

these became highly recognizable examples of TWINS branded products - including but not limited to the TWINS Dragon, Tiger, Spider, Tattoo, Fire-Flame, Wolf and Cobra products. Some of those designs are similar to the current designs to which Plaintiff claims a copyrighted interest; some of those designs are identical. A comparison of selected products appears in the Mechling Decl., ¶¶ 18-24.

Plaintiff has totally ignored the 2010 Assignment, the intellectual property that was covered by the 2010 Assignment, and the impact that assignment has on Plaintiff's claim of ownership in the unregistered designs.

## C. The 2013 Agreement

In or around 2013, Plaintiff expressed to the Mechlings that it did not want to be responsible for the significant ongoing costs associated with the TWINS and KING marks, including significant legal fees incurred by Twins LLC in registering these intellectual property rights. Plaintiff and Wongprasertkarn entered into a written agreement whereby Plaintiff and Wongprasertkarn sold their interest in Twins LLC and the intellectual property rights in the Trademarked Goods to the Mechlings, in exchange for the Mechlings' agreement to pay the significant costs incurred by Twins LLC, including those associated with trademark registration, and that the Mechlings would be responsible for all current and future legal and business costs of the business (the "2013 Agreement")[1]. Mechling Decl., ¶¶ 8-9.

By virtue of the 2013 Agreement, the Mechlings had sole ownership of Twins LLC and the intellectual property rights of its brands, and thus exclusive global control over international sales of the Trademarked Goods. All other common law rights and goodwill associated with Twins Special Co. Ltd were also assigned. Mechling Decl., ¶ 10.

///

///

---

[1] The 2013 Agreement further required that Plaintiff would continue to provide its manufactured goods at the best purchasing terms and prices in exchange for $500,000 to be paid by the Mechlings within four years from the making of the contract, secured by certain real property owned by the Mechlings. Mechling Decl., ¶¶ 8-9.

## D. The 2017 Agreement

Despite this agreement, Plaintiff began to engage in the secret and unauthorized sale of non-genuine TWINS and KING goods, including to customers in the United States and numerous international markets, in breach of the 2010 Assignment and the 2013 Agreement. Mechling Decl., ¶ 11.

After learning of Plaintiff's conduct and confronting Plaintiff's principals, the Mechlings were assured Plaintiff would stop the unauthorized sale of non-genuine Trademarked Goods, and direct all of its distributors (who had been distributing the non-genuine, unauthorized goods) to Twins LLC. Mechling Decl., ¶ 11. Seeking an amicable business solution in order to continue their professional relationship, in 2017, Plaintiff and Twins LLC entered into an agreement memorializing a new structure and terms for the production, sale, and distribution of the goods on a going-forward basis. The agreement expressly required Plaintiff to compel all of its major sellers, including sixty-five (65) of its existing international sellers, to sign contracts with Twins LLC. Plaintiff and Twins LLC would then each receive a percentage of the total sales revenue pursuant to the revenue structure set forth in the agreement. Mechling Decl., ¶¶ 12-13.

Unfortunately, Plaintiff again failed to meet its obligations. Of its major sellers, Plaintiff only directed two out of sixty-five to contract with Twins LLC. Moreover, Plaintiff continued its sale of non-genuine, unauthorized goods not only to these two customers, but generally into the USA and international markets as well. As a result, Twins LLC never executed sales agreements with any but two of Plaintiff's major international sellers, and consequently never received the portion of sales revenue that it would have received pursuant to the terms of the agreement. Mechling Decl., ¶ 14.

Instead, Plaintiff continues to this day to engage in the unlawful sale of non-genuine, unauthorized goods. Not only does this deprive Defendants of the benefit of the 2013 and 2017 Agreements, but it has significantly damaged the brand. Indeed, Plaintiff and their non-genuine, unauthorized sellers have engaged in a concerted effort to create confusion among consumers and in the marketplace about the Brands. An open and obvious example

of this can currently be found on twinsspecial.com (which Plaintiff is currently improperly controlling) and Plaintiff's Facebook page, where Plaintiff posted a notice regarding the current dispute.  Mechling Decl., ¶ 15.

Plaintiff is relying on the goodwill that Twins LLC owns, which includes the history of the KING and TWINS Brands, to attract customers to themselves while disparaging the operations of Twins LLC's sublicensees.

**E.      Defendants' Enforcement Actions to Stop Plaintiff's Unlawful Sale of Goods.**

Plaintiff's refusal to honor the 2013 and 2017 Agreements through its sale of non-genuine, unauthorized goods has significantly damaged Twins LLC and the Mechlings.  As a result, Defendants have been forced to initiate numerous enforcement actions to try and stop Plaintiff from continuing its unlawful sale of the Trademarked Goods.  For example, Defendants have initiated several Federal Court actions throughout the United States over the past two years seeking to enjoin retailers from engaging in the unauthorized sale of Trademarked Goods. This has resulted in at least three default judgments and three consent judgements.  There is evidence in the majority of these cases (if not all of them) which suggests these retailers are either connected to and/or supplied by Plaintiff.  Mechling Decl., ¶ 16.

The Mechlings have also employed extrajudicial enforcement actions, submitting administrative complaints aimed at shutting down internet domains, websites, social media, marketplace accounts, and payment processors of unauthorized, infringing, and/or counterfeit sellers. To date over 6,000 listings have been reported to Amazon and over 3,000 listings have been reported to eBay.  Virtually all reported listings have been taken down.  Hundreds of cease and desist letters have also been sent to counterfeit sellers.  The individual sellers supporting these listings have in some cases also had their Amazon, PayPal, or eBay seller accounts suspended.  There is evidence linking those internet retailers with Plaintiff as well. Mechling Decl., ¶ 17.

///

///

**F.    Plaintiff's Two Related Cases: The *Pouliot v. Mechling* Action Pending in the Southern District of California and the Related *State Court Action* in San Diego Superior Court**

In or around 2020, Plaintiff was approached by Simon Pouliot, an individual who had spent some time in or about 2013 trying to establish a business relationship with Twins LLC, and who has made repeated efforts to try to obtain Defendants' interest in the Trademarked Goods.   Pouliot convinced Plaintiff that it had been wronged by the Mechlings in selling their interest to Twins LLC in 2013 and falsely claimed that the Mechlings had taken advantage of Plaintiff's trust and that they had stolen Plaintiff's valuable intellectual property rights. Pouliot convinced Plaintiff to assign any claims it had against the Mechlings to Pouliot in order to rectify these harms. Thereafter, on February 4, 2021, Pouliot, as assignee of Plaintiff's claims, filed a Complaint against the Mechlings alleging that the Mechlings breached the 2013 Agreement with Plaintiff by failing to make the $500,000 payment (the "Pouliot Action").   Declaration of Mary K. Wyman in Support of Defendants' Opposition to Motion ("Wyman Decl."), ¶ 2.

On July 9, 2021, Plaintiff sought to intervene as a plaintiff in the Pouliot Action under Federal Rule of Civil Procedure 24.   Plaintiff's Motion to Intervene was based on Plaintiff's argument that it had somehow been tricked or pressured by Pouliot into assigning its claims against the Mechlings to Pouliot.   Wyman Decl, ¶ 3.   Concurrent with the Motion to Intervene, Plaintiff filed a Complaint in San Diego Superior Court styled *Twins Special Co. Ltd. v. Pouliot*, Case No. 37-2021-00030199 (the "State Court Action"). The State Court Action sought to invalidate the assignment to Pouliot of Plaintiff's claims against the Mechlings.   Wyman Decl, ¶ 4.   On November 4, 2021, the Court in the Pouliot Action granted Plaintiff's Motion to Intervene, permitting it to adopt Pouliot's complaint as its own complaint.   Wyman Decl, ¶ 5.

On July 5, 2022, the Mechlings filed counterclaims against both Pouliot and Plaintiff in the Pouliot Action.   With respect to the claims against Plaintiff, the Mechlings asserted counterclaims for Breach of Contract, Breach of the Implied Covenant of Good Faith and

Fair Dealing, and Unjust Enrichment. Wyman Decl, ¶ 6. The gravamen of the Mechlings' claims against Plaintiff was that by engaging in the unauthorized sales of the Trademarked Goods, it deprived the Mechlings of the benefits of their purchase of Plaintiff's interest in Twins LLC in 2013. The claims against Plaintiff focused in large part on Plaintiff's ongoing efforts to unlawfully sell unauthorized Trademarked Goods throughout the world.

On September 9, 2022, all of the parties in the Pouliot filed a Joint Motion for Stay of Action Pending Final Adjudication of Related State Court Case, which was granted. The Pouliot action remains stayed pending trial in the State Court Action. Wyman Decl, ¶ 7.

## G.  The Instant Action

Just as with the Pouliot Action, this current action is another attempt by Plaintiff to recapture the rights to Twins LLC and the Trademarked Goods that it sold to the Mechlings ten years ago. This case is also focused on the transactions that took place between Plaintiff and the Defendants in 2010 and 2013 that impacted the control of the Trademarked Goods.

Totally ignoring the deals in 2010 and 2013 by which Plaintiff sold its entire interest in Twins LLC, which owned the rights to the Trademarked Goods, Plaintiffs filed the Complaint in this action to seek the right to continue to sell goods with the TWINS and KING brand. Now, over a year into this litigation, Plaintiff asks the Court to issue a preliminary injunction enjoining Defendants from continuing their rightful sale of certain of the Trademarked Goods.

## LEGAL ANALYSIS

A plaintiff seeking a preliminary injunction in a copyright infringement claim must establish: (1) that the plaintiff is likely to succeed on the merits; (2) that the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 978–79 (9th Cir. 2011). Plaintiff carries the burden of establishing each of these

elements.[2]  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

The imposition of a preliminary injunction is an "extraordinary remedy," and thus may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Winter, supra*, 555 U.S 7 at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972) (1997). Thus, "the propriety of injunctive relief in cases arising under the Copyright Act must be evaluated on a case-by-case basis in accord with traditional principles and without the aid of presumptions or a 'thumb on the scale' in favor of issuing such relief." *Perfect 10*, *supra*, 653 F.3d at 980-981.

Plaintiff has failed to carry its burden on each of the requisite elements.

**A.     Plaintiff Has Failed to Submit any Credible Evidence Demonstrating a Likelihood of Prevailing on the Merits of Its Claim of Copyright Infringement.**

Plaintiff must meet two critical requirements to carry its burden of demonstrating a likelihood of prevailing on the merits of its copyright infringement claim: (1) ownership of the infringed material; and (2) a violation of at least one exclusive right granted to copyright holders under 17 U.S.C. Section 106 by the infringer.  *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001). The 9th Circuit has recognized that copyright ownership arises automatically upon creation of the work and registration is not required to establish ownership. *See Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 616 (9th Cir. 2010). Here, because the claimed copyrights are **not registered**, there is no presumption of ownership, so it must be proven. Plaintiff makes no serious effort to establish the ownership of the alleged copyrighted designs.

///

///

---

[2] Although the Ninth Circuit has recognized an "alternate formulation" of the Winters Test "under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction," (also referenced as the "sliding scale" approach), the plaintiff still must establish a likelihood of irreparable injury and that the injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

**1. Plaintiff Has Submitted no Evidence Supporting Its Claim of Ownership of the Copyrighted Works.**

To prove ownership of an unregistered copyright, Plaintiff must present some evidence of ownership of the designs for which it now claims an unregistered copyright. Because Plaintiff in this case cannot produce or rely upon a certificate of copyright registration, it was obligated to introduce other evidence to satisfy its burden. Thus, for example, Plaintiff could have introduced evidence of original artwork or photographs at the time the designs were created, but failed to do so. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1218 (9th Cir. 1997). Plaintiff also could have produced evidence of ownership of the work, such as contracts or agreements that show the transfer of ownership or licensing rights, but failed to do so. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989).

In support of its claims, Section IV(A)((1) of the Motion purports to address the requirement that Plaintiff establish ownership of the claimed copyrighted designs. The sum total of all the evidence in that section offered by Plaintiff to prove ownership are two declarations: the declaration of Khun Wilai at ¶¶ 6 – 7; and the declaration of Kun Tee at ¶ 4. (See Motion, p. 4, lns. 19 – 21.) However, Wilai's declaration merely makes conclusory statements about the creation and ownership of the Works without **any** supporting evidence:

> "As part of the business, Twins Thailand regularly creates new graphic designs for our products. Within the past few years, each of the designs shown below was created in Thailand for Twins Thailand's products. All copyright and other intellectual property rights for these designs is owned by Twins Thailand. Twins Thailand has never licensed or otherwise given permission to use any of these designs to the Mechlings or any of their entities."

(Declaration of Wilai Wongprasterkarn, ¶ 6.)

Similarly, the Kun Tee Decl. merely states when the designs were first placed on Twins Thailand products: "Each of the designs below was first placed on Twins Thailand

products after Twins Thailand last filled orders for the Mechlings or their companies. I am unaware of any fulfilled order from the Mechlings for Twins Thailand products that contain any of these designs." Declaration of Pisit Chitsanitgul, ¶ 4.

Neither of those declarations addresses any aspect of the creation of the designs, such as the date of creation or the person who created the designs. Moreover, there is no evidence offered by Plaintiff to support the creation of the designs, such as drafts, sketches, notes, or photographs of the work in progress. Plaintiff also did not offer evidence such as emails or other correspondence related to the creation or ownership of the work. Even a declaration from a disinterested third-party regarding the creation of the work may have added some evidentiary weight to Plaintiff's argument, but none was offered. *Overman v. Loesser*, 205 F.2d 521, 524 (9th Cir. 1953).

The absence of any evidence of ownership other than the unsubstantiated statements of Plaintiff's principal would cause Plaintiff's Motion to fail under normal circumstances. But those failures are even more critical in this case. The history between these parties goes back well over a decade. That history is significant to this dispute. As noted previously, in 2010, Plaintiff assigned the TWINS and KING brands to Twins LLC, **including all of the intellectual property rights associated with the brands**. Plaintiff does not address why Defendants did not acquire the right to use these designs as part of that transaction. Nor does it address why, in 2013, when the Mechlings took over sole ownership of Twins LLC and all of the intellectual property owned by the company, they would not have had the exclusive right to use the designs which Plaintiff now claims are its copyrighted designs.

2.     **Evidence Exists to Demonstrate Defendants Acquired the Right to Use the Tattoo, Wolf, Cobra, Dragon and Naga Designs in 2010.**

Defendants have submitted evidence demonstrating that all of the intellectual property rights to the Twins and King Brands were assigned to Twins LLC in 2010. That intellectual property included the designs appearing on various Muay Thai boxing shorts. Those boxing shorts had images of the tattoo, wolf, cobra, dragon and naga (a dragon-type

creature) to which Plaintiff now claims a copyrighted interest. Mechling Decl., ¶¶ 3-5, 18-24. Plaintiff claims it has the protectable right in those interests, despite the fact that since 2010, Twins LLC has used some form of that design on its Muay Thai gear without any objection from Plaintiff.

Thus, the prior use of those images further undermines Plaintiff's unproven claim that it has ownership of an unregistered copyright in those images.

**B.    Plaintiff Has Failed to Establish it is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.**

A plaintiff may not obtain a preliminary injunction absent a showing that Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief.  This requires the applicant to demonstrate that imminent irreparable harm is likely: "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  Furthermore, "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."  *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957, 966 (C.D. Cal. 2016).

Thus, "a party seeking injunctive relief must adduce evidence of likely irreparable harm and may not rely on 'unsupported and conclusory statements regarding harm [the plaintiff] might suffer.'" *Disney*, *supra*, 224 F.Supp.3d at 975 (C.D. Cal. 2016) (citing *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

**1.    Plaintiff Has Failed to Produce Any Actual Evidence Beyond Conclusory Declarations in Support of its Claim of Irreparable Harm.**

In the case at hand, the most telling aspect of Plaintiff's Motion is that in the section related to irreparable harm, the very section in which Plaintiff is required to submit **evidence** of irreparable harm, not merely conjecture, *Plaintiff does not cite to a single item of evidence in support of its conclusory claims of irreparable harm.* Instead, Plaintiff relies

on a litany of claims which it contends establish irreparable harm, but none of which are based on the citation to evidence. For example, Plaintiff states, "[T]he association of Plaintiff (through the display and sale of its original works) with Defendants [whose reputation is terrible given it inability or refusal to fulfill orders placed via its websites) will continue to be eroded." (Motion, p. 9, lns. 5 – 7.) Plaintiff submits no evidence whatsoever to establish that there is any imminent threat to its sales, its relationships with its customers, or its brand. For example, there are no customer declarations showing any confusion between respective brands, or any market studies demonstrating the "erosion" of Plaintiff's brand.

Plaintiff further asserts, "The association brought about by Defendants' acts of infringement threaten to irreparably tarnish the positive reputation and goodwill that Plaintiff has spent decades cultivating." (Motion, p. 9, lns. 8 – 10.) Here again, that conclusory claim is made without citation to any evidence. Moreover this statement, based on the speculative threat of **future** harm, fails to meet the requirement that Plaintiff establish the imminency of harm.

Lastly, Plaintiff claims, "[T]he same sub-set of consumers, those shopping in the Muay Thai boxing space, are likely to encounter Plaintiff's products bearing its original designs and Defendants' infringing copies. This is likely to lead to confusion, lost sales, harm to goodwill and other harm forms of irreparable harm that preliminary injunctions seek to prevent." (Motion, p. 9, lns. 13 – 17.) Here again, the failure to cite to any evidence in support of this claim underscores the shortcoming of Plaintiff's motion. There is no evidence of the imminency of lost sales, or harm to goodwill, or the other unspecified forms of irreparable harm. Those unsubstantiated claims do not establish irreparable harm in accordance with federal law.

Courts in the Ninth Circuit have frequently examined the requisite level of showing necessary to support the imposition of a preliminary injunction. They have routinely held that conclusory statements in a declaration are insufficient to support a finding for a preliminary injunction. *Dotster, Inc. v. Internet Corp. For Assigned Names & Numbers*,

296 F. Supp. 2d 1159, 1164 (C.D. Cal. 2003) (citing *American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir.1985) [**declarations of plaintiff's executives** detailing the disruptive effect of defendant's exclusive contracts on plaintiff's business could not support the issuance of a preliminary injunction because they were "conclusory and without sufficient support in facts."]); *Goldie's Bookstore, Inc. v. Sup. Ct.*, 739 F.2d 466, 472 (9th Cir.1984) [reversing issuance of preliminary injunction where district court had determined that plaintiff "would **lose goodwill and 'untold' customers" because the finding was not based on any factual allegations and was speculative**]; *Herb Reed Enters., LLC, supra*, 736 F.3d at 1250 [indicating that a district court should not rely on **"unsupported and conclusory statements"** when finding facts as part of a preliminary injunction analysis]; *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 382–83 (9th Cir. 2016) [finding it was not error for the district court to **discount conclusory statements made in a declaration where the declarant did not provide the basis for the conclusion**]; *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 411–12 (9th Cir. 2015) [district court refusing to grant preliminary injunction where the movant's contentions were "conclusory and unsupported by facts in the record."]; *Yes on Prop B v. City and County of San Francisco*, 440 F.Supp.3d 1049(N.D. Cal. 2020), 1060 [declining to grant a preliminary injunction where the **only evidence produced by the movant is "a single sentence" in a declaration**].)

More specifically, in trademark and copyright litigation specifically, declarations providing evidence of lost goodwill are sufficient to merit a preliminary injunction **only when they reference actual costumer complaints** arising from the alleged incidents of infringement. *Collins v. United States Dep't of Veterans Affs.*, No. 3:19-CV-00867-H-MSB, 2020 WL 133889, at *3 (S.D. Cal. Jan. 13, 2020) (slip copy). In *Collins v. United States Dep't of Veterans Affs.*, Plaintiff, a non-profit organization providing counseling services to veterans, sought a preliminary injunction to enjoin defendant from using an allegedly infringing trademark. *Id.* at *1. In support of its claim of irreparable harm, Plaintiff offered three declarations from customers testifying that defendant's use of the

mark caused them confusion, as well as a declaration from Plaintiff's founder, stating that the Defendant's use of the allegedly infringing mark is harmful because of the poor reputation that Defendant has in the veteran community. *Id.* at *3. The Declaration further stated that the defendant's infringement causes veterans and service providers to believe that Plaintiffs are working with Defendant, which "makes those veterans and service-providers less likely to seek help from" Plaintiffs. *Id.* The court found the declarations "conclusory" and denied plaintiffs' motion for a preliminary injunction due to the absence of any "concrete evidence" in support of the declarations' assertions. *Id.*

### 2. Plaintiff's Knowledge of Defendants' Sale of the Alleged Copyrighted Products for Years Belies the Assertion of Imminency of Harm.

With respect to Plaintiff's obligation to prove the imminency of actual harm, "Courts have held that 'long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.'" *Disney*, *supra*, 224 F.Supp.3d at 977 (citing *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)).

In this case, Plaintiff's claims for the necessity of an immediate interim remedy are belied by the fact that for four years, Plaintiff was aware of the fact that all of the equipment with the designs at issue in this Motion were being sold on the website for Twins LLC. The "Subject Designs" in which Plaintiff contends it has a copyright interest have been displayed and sold on Defendants' websites since June 2019, and have therefore been presumably known and available to Plaintiff for the past four years. Mechling Decl., ¶ 24. Yet it did nothing to stop those sales in four years.

### C. Plaintiff Has Failed to Establish the Balance of Hardships Weighs in Favor of Imposing a Preliminary Injunction.

Before issuing a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). In balancing the parties' competing hardships, courts consider the potential damage to the business of a

defendant should a preliminary injunction be imposed. *Disney Enterprises, Inc.*, *supra*, 869 F.3d at 867. Where the defendant has invested significant time and expense into the marketing and sale of purportedly infringing products, courts will find a preliminary injunction "plainly inequitable and highly prejudicial" to the defendant. *Edge Games, Inc. v. Elec. Arts, Inc.*, 745 F. Supp. 2d 1101, 1118 (N.D. Cal. 2010) (citing *E–Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir.1983).

Here, as has been established above, Defendants have sold these designs on its website, in plain view of Plaintiff, for four years. Defendants have invested both time and money into its sales operations, and have further spent significant amounts of money enforcing its intellectual property rights in jurisdictions throughout the United Stated. Mechling Decl., ¶¶ 16-17. To completely shut down these sales would work a hardship on Defendants' business. Mechling Decl., ¶¶ 16-25.

Furthermore, if the first two *Winter* prongs weigh against issuance of a preliminary injunction, courts typically decline to find the balancing of hardships in the plaintiff's favor. *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) ["In the face of a doubtful copyright claim and the absence of irreparable harm . . . we need not consider the final two *Winter* factors, the balance of equities and public interest"]; *Fox Television Stations, Inc. v. BarryDriller Content Sys.*, PLC, 915 F. Supp. 2d 1138, 1148 (C.D. Cal. 2012) (citing *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ["To the extent that the Court finds that Plaintiffs are likely to succeed on the merits here, then Defendants have no equitable interest in continuing an infringing activity"]).

**D.  Plaintiff Has Failed to Establish the Preliminary Injunction is in the Public Interest.**

The public interest is served by "preventing the misappropriation of skills, creative energies, and resources which are invested" in copyright-protected work. *Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1015 (C.D. Cal. 2011); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1148 (C.D. Cal. 2012). However, the public's interest in intellectual property protection is curtailed where

"any purported intellectual property interest is highly attenuated." *Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1195 (C.D. Cal. 2011), affirmed *by Arenas v. Shed Media US, Inc.*, 462 Fed.Appx. 709 (9th Cir. 2011). Thus, similarly to the "balancing of hardships" inquiry, courts decline to find the public interest served if the first two *Winter* prongs disfavor the issuance of a preliminary injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015); *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1075 (S.D. Cal. 2019); *Fox Television Stations, Inc. v. BarryDriller Content Sys.*, PLC, 915 F. Supp. 2d 1138, 1148 (C.D. Cal. 2012) [in a copyright infringement case, "the public interest factor is inextricably bound up in how the Court decides the merits"].

**E.     In the Event that the Court Grants the Preliminary Injunction, Defendants Request the Issuance of a Bond**

As a condition for issuing a preliminary injunction, the court must require that plaintiff post security in an amount which the court deems proper. Fed.R.Civ.P. 65(c). "The Ninth Circuit has no steadfast rule as to the amount of a bond as a result of the issuance of a preliminary injunction." *Garrett v. City of Escondido,* 465 F.Supp.2d 1043, 1059 (S.D.Cal.2006). "Generally, the bond amount should be sufficient 'to protect [the] adversary from loss in the event that future proceedings prove that the injunction issued wrongfully.' " *Id.* (quoting *Edgar v. MITE Corp.,* 457 U.S. 624, 649 (1982)).

If a preliminary injunction is granted in this case, it would be difficult for Defendants to calculate its damages based on loss of sales of the products at issue, the corresponding loss of sales of other products due to the impact the preliminary injunction would have in attracting customers to its websites, and the general impact on its business based on the loss of revenue.  However, a conservative estimate would put losses at no less than $50,000.  A court may rely on estimates in determining the proper amount of a bond.  *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1038 (9th Cir. 1994).

Furthermore, it is clear that Plaintiff's Motion is brought for strategic reasons.  It is not a coincidence that the preliminary injunction was only sought when the case pending

in the District Court of Hawaii was transferred to the Southern District of California, years after Twins LLC commenced sales using these designs. This is a trial strategy meant to put the maximum amount of pressure on Defendants so that they will not be able to shoulder the financial burden of this lawsuit. Thus, a bond would further serve the purpose of discouraging an injunction based on tenuous legal grounds. *See Coyne–Delaney Co. v. Capital Dev. Bd.,* 717 F.2d 385, 392 (7th Cir.1983) ["... [this test] discourages the seeking of preliminary injunctions on flimsy (though not necessarily frivolous) grounds"]).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's Motion to for Preliminary Injunction should be denied.

DATED: March 27, 2023

**WITHAM MAHONEY & ABBOTT, LLP**

By: */s/ Mary K. Wyman*
    Matthew M. Mahoney, Esq.
    Mary K. Wyman, Esq.
    Attorneys for Defendants Twins Special, LLC,
    Nicholas Mechling, and Christopher Mechling