BUCHALTER
A Professional Corporation
SANJAY BHANDARI (SBN: 181920)
655 W Broadway Suite 1600
San Diego, CA 92101
Telephone: (619) 219-5335
Facsimile: (619) 219-5344
Email: sbhandari@buchalter.com

BUCHALTER
A Professional Corporation
MATTHEW L. SEROR (SBN: 235043)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: mseror@buchalter.com

Attorneys for Plaintiff
TWINS SPECIAL CO., LTD.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWINS SPECIAL CO., LTD., a private limited company organized under the laws of Thailand, | Case No. 3:23-cv-00223-JO-DDL |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| TWINS SPECIAL, LLC, NICHOLAS MECHLING, an individual, CHRISTOPHER MECHLING, an individual, TWINS SPECIAL, an unincorporated general partnership, and DOES 1-10, inclusive, | |
| Defendants. | |

Plaintiff Twins Special Co., Ltd. ("Plaintiff" or "Twins Thailand"), by and through its attorneys, brings this action against Defendants Twins Special, LLC ("Twins US"), Nicholas Mechling ("Nick Mechling"), Christopher Mechling ("Chris Mechling"), and Twins Special, an unincorporated partnership ("Twins Special") (collectively, "Defendants"), and alleges as follows:

## SUMMARY

1.      Plaintiff Twins Thailand is a family-run "Muay Thai" boxing equipment manufacturer whose handcrafted gloves and other products are prized by Thai boxing enthusiasts worldwide. Twins Thailand is a reputable business honored by numerous awards and recognitions. For years, Plaintiff and its customers have been harassed and preyed upon by Defendants (two legal process-evading brothers and various entities they control), whose false promises and misconduct have earned them adverse judgments, bankruptcy court oversight, an "F" rating from the Better Business Bureau, and countless angry customers. For years, Defendants have exploited Plaintiff's principals' limited English and trusting nature, failing to pay for numerous obligations and unjustly profiting from Plaintiff's good name and quality. Now that Defendants have started to source goods from other companies, this has resulted in an untenable situation where customers worldwide, including in the U.S., are confused and misled into ordering from Defendants, thinking they are getting quality handcrafted Thai boxing goods from a long-standing, reputable Thai company. Instead, they either receive nothing, or unnamed subcontractors' goods, without clarification that neither Defendants nor their goods have anything to do with Twins Thailand. Defendants' customer deception even includes copyright infringement of Plaintiff's copyrighted designs. Defendants' misuse of Plaintiffs' good name to injure consumers must end: they must stop infringing Plaintiff's copyrights, and they must not pass off others' goods as Plaintiff's.

**SECOND AMENDED COMPLAINT**

BUCHALTER

BN 75562213v3

**THE PARTIES**

2.     Twins Thailand is a private limited company organized under the laws of Thailand and based in Thailand.  Twins Thailand manufactures and sells boxing gloves, boxing gear and martial arts equipment for both Western boxing and "Muay Thai" aka "Thai Boxing."

3.     Defendant Twins US is a California limited liability company organized and existing under the laws of the state of California.  Plaintiff is informed and believes, and on that basis alleges, that Twins US was formed by, and at all times relevant hereto was being operated under the direction and supervision of, Chris Mechling and Nick Mechling (collectively, "the Mechlings").

4.     Defendant Chris Mechling is a United States citizen.

5.     Defendant Nick Mechling is a United States citizen.

6.     Defendant Twins Special is an unincorporated general partnership owned, controlled and operated by the Mechlings, with Nick Mechling and Chris Mechling as its two general partners.  At a time unknown to Plaintiff, for reasons unknown to Plaintiff, the Mechlings began conducting relevant business activities not under Twins US but as "Twins Special," an entity Nick Mechling recently described under oath as an entity separate from Twins US, but not an entity incorporated in another jurisdiction or for which a fictitious business name filing has been made.

7.     Plaintiff is informed and believes and based thereon alleges that, at all relevant times, defendants Chris Mechling, Nick Mechling, Twins US, Twins Special and Does 1 through 10 were acting in a corporate, parent, subsidiary, affiliate, supervisor, agency, employer, employee, associate, partner, joint venture, representative, and/or other capacity as agents, representatives, aiders and abettors and/or alter egos of one another and with the permission, consent, knowledge, authorization, ratification, and direction of each other.  Plaintiff is further informed and believes and based thereon alleges that, at all relevant times, defendants Chris

Mechling, Nick Mechling, Twins US, Twins Special and Does 1 through 10 commingled funds and other assets, failed to segregate funds of the separate entities, and authorized the diversion of business funds or assets to other uses, treated the assets of the business entities as those of the individuals, failed to observe corporate formalities, failed to adequately capitalize their business entities, and used Twins US and Twins Special as shells or instruments for a single venture for unlawful international business transactions. As a result of the foregoing, there is and was such a unity of interest and ownership between defendants Chris Mechling, Nick Mechling, Twins US, Twins Special and Does 1 through 10 that it would be unfair if the conduct alleged herein was treated as that of one defendant alone.

8. Plaintiff is informed and believes, and on that basis alleges, that the Mechlings have created a subterfuge whereby their exploitation and use of the TWINS and KING PROFESSIONAL Marks is purportedly operated by and through either themselves or through Twins US and Twins Special (depending on the activity). But in reality, all aspects of operations and management of all things related to the TWINS and KING PROFESSIONAL Marks are run by and overseen by the Mechlings, regardless of whether the Mechlings chose to invoke the corporate form of Twins US, Twins Special, or some other (as of yet unknown) entity for that specific purpose. By way of example, while Twins US allegedly licensed the TWINS and KING PROFESSIONAL Marks to the Mechlings, Twins Special held itself out to third parties as overseeing the licensing of the TWINS and KING PROFESSIONAL brands. In sworn deposition testimony taken in this action, Nick Mechlings confirmed that the "managing director" of Twins Special (and its only other known employee other than the Mechlings themselves) is paid directly by the Mechlings, shares an email address with the Mechlings, and uses as least one fictitious alias to communicate with customers in connection with customer service functions related to goods bearing the TWINS or KING PROFESSIONAL Marks.

**SECOND AMENDED COMPLAINT**

Buchalter

BN 75562213v3

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338, and the Lanham Act, 15 U.S.C. §§ 1051, 1119, *et seq*., the Copyright Act of 1976, Title 17 U.S.C. § 101, *et seq.* and 28 U.S.C. § 2201, *et seq.* This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.  Alternatively, diversity jurisdiction also exists.

10.     The Court has general personal jurisdiction over Defendants Nick Mechling and Chris Mechling because each has continuous, systematic and substantial contacts with this judicial district.  Based on information and belief, including statements under oath by the Mechlings, they are domiciled in California and accept this district as having general jurisdiction over them.

11.     The Court also has general personal jurisdiction over Defendants Twins US and Twins Special because each has continuous, systematic and substantial contacts with this judicial district. Based on information and belief, Defendants Twins US and Twins Special are domiciled in this judicial district.  The Mechlings are the sole owners and/or partners of Twins US and Twins Special and direct, control and coordinate Twins US and Twins Special's activities from this judicial district.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged herein, including the actions of the Defendants as alleged herein occurred while they were located in this judicial district.

## BACKGROUND FACTS

13.     Twins Thailand is the undisputed owner of the TWINS SPECIAL, KING and KING PROFESSIONAL trademarks (the "Marks") in Thailand in connection with boxing gloves, boxing gear and martial arts equipment.  Twins Thailand manufactures goods sold under the foregoing trademarks, and has done so

BUCHALTER

**SECOND AMENDED COMPLAINT**

BN 75562213v3

since these marks were first used in commerce. Some of the goods sold by Twins Thailand end up being offered for sale to consumers in the United States and other countries around the world.

14. Plaintiff commenced use of the TWINS SPECIAL trademark in or around 1992. Plaintiff commenced use of the KING and KING PROFESSIONAL marks in or around 2011.

15. Following its first use of the TWINS SPECIAL mark, Plaintiff created numerous logos and other graphic depictions of the TWINS SPECIAL mark for use on and in connection with its goods, including the following:



16. Plaintiff's products are known throughout the world for their superior craftsmanship and quality, both of which stem directly from the expertise of Twins Thailand, including in materials sourcing and artisanal manufacturing. Plaintiff's products sold under the Marks have generated millions of dollars of sales, and the Marks have gained recognition amongst consumers due to the high quality of the goods. Plaintiff's products have achieved prominence throughout the world, including in the United States.

17.     Many of the products manufactured by Plaintiff bear a prominently placed marking, depicted below.  Above and below the dominant circle shape are the words HAND MADE and THAILAND.  The center portion of the circle includes the words FIRST QUALITY, and above and below that, in white lettering on a black background, are the words TWINS SPECIAL and GENUINE LEATHER.



18.     In June 2010, and then again in February 2013, the Mechlings convinced Plaintiff's representatives to sign certain English language documents relating to the Marks. The Mechlings made numerous material misrepresentations to the Plaintiff in connection with these two agreements.

19.     At or about the time the June 2010 agreement was signed, Twins US began acting as a U.S. distributor for Plaintiff's products sold under the Marks. Twins US also applied for and received certain U.S. trademark registrations for the Marks.

20.    For a time thereafter, through approximately early 2019, Plaintiff sold goods bearing the Marks to the Mechlings and Twins US for sale in the United States.  Plaintiff would also sell goods that it manufactured bearing the Marks to its other customers.  Plaintiff is informed and believes, and on that basis alleges, that some of the goods sold to other customers would occasionally be offered for sale and sold in the United States.

21.    On information and belief, the Mechlings contend that in March 2017, Twins US granted to the Mechlings the exclusive right to use, enforce and sublicense the intellectual property of Twins US, which the Defendants contend includes the Marks.

22.    By 2020, the relationship between Plaintiff on the one hand, and Twins US and the Mechlings had soured.  Among other issues, Twins US and the Mechlings had made many false promises to Plaintiff, including failing to pay for numerous orders from Plaintiff.  Plaintiff also began to discover the material misrepresentations made by Twins US and the Mechlings to Plaintiff in connection with the 2010 and 2013 agreements. Twins US and the Mechlings (and Twins Special in connection with enforcement activities) also began taking surprising and unjustified positions regarding the 2010 and 2013 agreements, including that those agreements had transferred Plaintiff's worldwide intellectual property rights, outside of Thailand, to the Mechlings and/or Twins US, with which the Mechlings and/or Twins US could source production from third parties and otherwise do whatever they wished.

23.    By August 2021, each of the Defendants began engaging in conduct and making statements to customers of Plaintiff, and potentially others, that the goods being sold by Plaintiff's customers infringed upon the purported trademark rights of the Defendants and/or were counterfeit.  Specifically, and without limitation, the Mechlings' initiated lawsuits against some of Plaintiff's customers, Twins US sent takedown notices to internet service providers which impaired their

BUCHALTER

BN 75562213v3

ability to sell authentic goods and Twins Special communicated with third parties believed to be selling Plaintiff's products in an effort to hinder those sales.

24. Plaintiff is informed and believes, and on that basis alleges, that in or about February 2022, the Mechlings, Twins US and/or Twins Special began acquiring goods bearing the Marks not from Plaintiff, but rather from a third party manufacturer or manufacturers, and began selling those goods to consumers. Plaintiff believes these sales were made, at least partially, via the websites listed in Paragraph 28 herein.

25. From the time that Twins US first began serving as a United States distributor for the products sold under the Marks until Defendants began acquiring the goods from other sources, Plaintiff served as Twins US's exclusive supplier of boxing gear and equipment bearing the Marks.

26. Plaintiff is informed and believes, and on that basis alleges, that prior to February 2022, every product sold by the Defendants bearing the Marks originated from Plaintiff.

27. Plaintiff is informed and believes, and on that basis alleges, that by February 2022, when Defendants began selling the goods manufactured by an entity or entities other than Plaintiff, Defendants no longer had any inventory of goods made by Plaintiff, or sufficient inventory to market Plaintiff's goods to consumers.

28. In and after February 2022, and despite the fact that it no longer had any or sufficient goods manufactured by Plaintiff in its possession, Defendants continued to make representations that the goods they were selling originated from the Plaintiff. For example, Defendants' websites (www.twinsfight.com; www.twinsmuaythai.com and www.twinsgloves.com) continued to prominently discuss the rich history of Plaintiff, as if it was Defendants' own. Defendants' thereby sought to deceive consumers into thinking that the goods Defendants are

BUCHALTER

BN 75562213v3

selling originate from Plaintiff and are handcrafted in Thailand. This representation is false, misleading and likely to deceive consumers.

29. Plaintiff is informed and believes that each Defendant played a role in the management and operation of the aforementioned websites, and therefore each is liable for the acts undertaken on the websites identified therein. Specifically, and pursuant to written agreements, Twins US owns the websites and licenses the right to sell branded merchandise on the websites to the Mechlings. The Mechlings in turn sub-license the right to operate the websites to sub-licenses and in connection therewith have the ability and obligation to oversee the operation and management of the websites, including the sale of infringing merchandise thereon. Twins Special is involved in and oversees licensing activities, enforces the rights licensed by the Mechlings (including those exploited on the foregoing websites), and also performs customer service functions in connection with sales occurring on the websites.

30. In addition, the Defendants added a marking to the gloves being sold on the aforementioned websites (the gloves that did not originate with Plaintiff) that further served to confuse consumers into believing that the products being sold on the websites actually originated with Plaintiff when in fact they did not. The marking added by Defendants is substantially similar to the marking used by Plaintiff in its products as depicted in Paragraph 16 above. Specially, on the top and bottom portion of the dominant circle shape are the words HAND MADE and GENUINE LEATHER, similar to as these appear in the Plaintiff's stamp. In addition, and as is the case with Plaintiff's stamp, the words FIRST QUALITY appear horizontally in the middle of the circular stamp. The use of white lettering on a black background and the overall spacing and coloring of the stamp is also virtually identical to that of Plaintiff. Below is an exemplar of the marking of Defendants' product:

**SECOND AMENDED COMPLAINT**

BUCHALTER

BN 75562213v3



31.    Defendants' website also include references to certifications that Plaintiff's goods had received from various regulatory bodies.  Plaintiff is informed and believes, and on that basis alleges, that Defendants' products did not have those certifications, and therefore this was a further attempt to confuse and deceive customers as to the source of Defendants' product.

32.    In addition, Defendants' continue to feature its purported continued ties to Plaintiff in promotional materials related to Plaintiff, including a promotional video featuring Plaintiff's products. Defendants' continued use of these materials misrepresents the source of the goods Defendants are now selling, suggests an affiliation, sponsorship or approval of Defendants' products by Plaintiff, and seeks to pass off Defendants' goods as Plaintiff's goods.

33.    Moreover, in connection with an effort to enter into endorsement agreements with Muay Thai fighters, Defendants' falsely tout their affiliation with Plaintiff, the ability to provide discounts for goods purchased through Plaintiff's

website, and the right to provide Muay Thai fighters who sign endorsement deals with them the ability participate in revenue sharing for goods purchased through Plaintiff's website.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)
### (Against All Defendants)

34.    Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations set forth in Paragraphs 1 through 33.

35.    As part of its business, Plaintiff regularly creates or causes to be created new graphic designs for its products.  Among the original designs created in Thailand, owned by Plaintiff, and used on Plaintiff's products are the following (collectively, the Subject Designs):



BUCHALTER

BN 75562213v3

36.     Plaintiff owns all right, title and interest in the Subject Designs, including all intellectual property rights associated therewith.

37.     Because the Subject Works were created and published in Thailand, they are protected from infringement in the United States without the need for formal registration.  By virtue of both Thailand and the United States being signatories to the Berne Convention, Plaintiff is empowered to bring suit for the infringement of the Subject Works without the need to obtain Copyright Registrations from the United States Copyright Office.  See Berne Convention for the Protection of Literary and Artistic Works, Article 5.

38.     Defendants have infringed upon Plaintiff's rights in the Subject Designs by selling, offering for sale, displaying and/or distributing products that bear designs that infringe upon the Subject Designs.  A side-by-side comparison of the Subject Designs and the infringing designs sold by Defendants evidences that the infringing designs are substantially similar, if not identical:





39.     Defendants' display, offering for sale and sale of products bearing the infringing copies of the Subjects Designs was not approved or authorized by Plaintiff, and Plaintiff never sold to Defendants any products bearing the Subject Designs.

40.     Due to Defendants' acts of infringement, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

41.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained revenues and profits that they would not otherwise have realized but for its infringement of the Subject Designs.  Plaintiff is entitled to a disgorgement of Defendants' profits attributable to the infringement of the Subject Designs.

42.     Plaintiff is informed and believes, and on that basis alleges, that Defendants' acts of infringement were undertaken with actual or constructive knowledge of Plaintiff's rights.  As a result, Defendant's acts of copyright infringement were, and are, intentional, malicious, willful and undertaken without regard to Plaintiff's rights.

## SECOND CLAIM FOR RELIEF

### (False Designation of Origin)

### (Against All Defendants)

43.     Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations set forth in Paragraphs 1 through 42

44.     In connection with the Defendants' sale of its products bearing the Marks, Defendants utilize false designations of origin, false and misleading descriptions of fact related to the source of the goods being sold and their association with the Plaintiff and other symbols which draw a false connection between Plaintiff and Defendants' products.

45.     Defendants' use of symbols, false designations of origin and false and misleading descriptions of fact is likely to cause confusion and to deceive consumers as to the affiliation, connection or association of Defendants with Plaintiff.

46.     Defendants' use of symbols, false designations of origin and false and misleading descriptions of fact is also likely to cause confusion and to deceive

consumers as to the origin, sponsorship or approval of Defendants' goods by Plaintiff.

47.     Defendants' use of symbols, false designations of origin and false and misleading descriptions of fact appear in the commercial advertising and promotion of its goods, and misrepresent the characteristics, qualities and geographic origin of its products.  The foregoing appear on ecommerce websites (www.twinsfight.com; www.twinsmuaythai.com and www.twinsgloves.com) owned by the Defendants and operated by, or under the supervision, of the Defendants.

48.     By reason of the foregoing, Defendants are liable to Plaintiff for: (a) an amount representing Plaintiff's damages; (b) Defendants' profits; and (c) reasonable attorneys' fees, costs including investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

**THIRD CLAIM FOR RELIEF**

**(Cancellation of Registrations-Fraud)**

**(Against Defendant Twins US)**

49.     Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations set forth in Paragraphs 1 through 33.

50.     On August 25, 2010 and August 26, 2010, Twins US filed applications for the following marks in the United States:

| Mark | Registration No. | Goods | Claimed Date of First Use |
|---|---|---|---|
| TWINS SPECIAL | 4,848,711 | Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic protective pads for chest, | February, 2003 |

BUCHALTER

BN 75562213v3

| | | |
|---|---|---|
| | abdomen, belly, shins and head for use with martial arts; punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any other sports or sports team, league, mascot or stadium | |
|  | 4,848,712 | Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic protective pads for chest, abdomen, belly, shins and head for use with martial arts; punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; | February, 2006 |

**SECOND AMENDED COMPLAINT**

BUCHALTER

BN 75562213v3

| | | | |
|---|---|---|---|
| | | abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any other sports or sports team, league, mascot or stadium. | |
|  | 4,848,713 | Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic protective pads for chest, abdomen, belly, shins and head for use with martial arts; punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any | February, 2003 |

| Mark | Registration No. | Goods | Claimed Date of First Use |
|---|---|---|---|
| other sports or sports team, league, mascot or stadium. | | | |

51. Each of the applications filed by Twins US in 2010 includes a date of first use of February 2003 and February 2006. These dates are prior to the formation of Twins US. In fact, the relied upon dates of first use are actually the dates of first use of the Marks by Plaintiff in the United States.

52. On July 6, 2009, third party Booster Budo & Fitness B.V.B.A. filed a trademark application for the following mark in the United States:

| Mark | Registration No. | Goods | Claimed Date of First Use |
|---|---|---|---|
|  | 3,749,271 | boxing shorts; caps; t-shirts; tank tops; sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards | June, 2008 |

53. U.S. Trademark Registration No. 4,848,711 (TWINS SPECIAL); Registration No. 4,848,712 (TWINS SPECIAL and Design Mark); Registration No. 4,848,713 (TWINS SPECIAL and Design Mark); and Registration No. 3,749,271 (the KING and Design Mark) shall collectively referred to as the "Registrations".

54. In connection with the trademark applications for the Marks filed in 2010 by Twins US, and the application filed by Booster Budo & Fitness B.V.B.A. in 2009, Twins US and Booster Budo & Fitness B.V.B.A. stated, under penalty of perjury, that "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm,

BUCHALTER

BN 75562213v3

corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."

55.     Plaintiff is informed and believes, and on that basis alleges, that at the time Twins US made the foregoing representation to the U.S. Trademark Office, that representation was inaccurate in that Twins US was aware of Plaintiff's rights in the mark which were the subject of the applications, knew that Plaintiff retained all rights to the applicable marks in Thailand, and knew that Plaintiff was continuing to sell products bearing the marks in the United States.

56.     Plaintiff is informed and believes, and on that basis alleges, that at the time Booster Budo & Fitness B.V.B.A. made the representations set forth in Paragraph 37 herein to the U.S. Trademark Office, that representation was inaccurate in that Booster Budo & Fitness B.V.B.A. was aware of Plaintiff's rights in the mark which was the subject of that application, knew that Plaintiff owned all rights to the applicable mark, and knew that Plaintiff was continuing to sell products bearing the applicable mark in the United States.

57.     Plaintiff is informed and believes, and on that basis alleges, that during the prosecution phase of the Registrations, Twins US presented Wikipedia evidence that obviously referenced Plaintiff but Twins US made it appear that the reference was to themselves.  Moreover, Twins US not only included this deceptive information in its response, it also did nothing to correct the records of the U.S. Patent and Trademark Office and caused the U.S. Trademark Office to rely on this evidence and the statements of ownership (which was given under penalty of perjury).  Such deceptions and misrepresentations resulted in the fraudulent issuance of registrations for the Marks by Twins US.

58.     Registration No. 3,749,271 was assigned to Twins US by Booster Budo & Fitness B.V.B.A. on or about October 3, 2011.

BUCHALTER

BN 75562213v3

59.     On or about November 10, 2021, Twins US filed a Section 8 and 15 Declaration of Use and Incontestability in connection with Registration Nos. 4,848,711, 4,848,712, and 4,848,713.

60.     On August 19, 2019, Twins US filed a Section 8 and 15 Declaration of Use and Incontestability in connection with Registration No. 3,749,271 and then filed a Petition to the Director to reinstate a cancelled registration in connection with the same registration on August 20, 2020.

61.     In connection with Section 8 and 15 Declarations of Use and Incontestability filed by Twins US, it submitted to the U.S. Trademark Office affidavits wherein Twins US stated, under penalty of perjury, the following multiple fraudulent statements: "Unless the owner has specifically claimed excusable nonuse, the mark is in use in commerce on or in connection with the goods/services…."; "The mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under 15 U.S.C. 1062(c), and is still in use in commerce on or in connection with all goods/services…"; and "There is no proceeding involving said rights pending and not finally disposed of either in the United States Patent and Trademark Office or in court."

62.     Plaintiff is informed and believes, and on that basis alleges, that at the time Twins US made the foregoing representations in its Section 8 and 15 filings, the representations contained therein were not accurate and that Twins US knew that they were not accurate.  Specially, Plaintiff is informed and believes, and based thereon alleges, that at the time Twins US made these representations, it was no longer using the Marks in commerce and at least one third party had challenged Twins US's claim of ownership in the Marks.  Despite its knowledge as to these matters, Twins US concealed the true facts from the U.S. Trademark Office for the purpose of obtaining its Section 8 and 15 renewal.

BUCHALTER

BN 75562213v3

63.    The U.S. Trademark Office reasonably relied on the accuracy of the foregoing representations made by Twins US (and its predecessor) when it granted the Registrations, and the Acceptance and Acknowledgment of the Section 8 and 15 Declaration in connection with Registration 3,749,271, and will be relying on these misrepresentations if it grants the Acceptance and Acknowledgement of the Section 8 & 15 Declarations in connection with Registration Nos. 4,848,711, 4,848,712, 4,848,713.

64.    Because the Registrations were obtained by fraud, and the statements provided to the U.S. Trademark Office in connection with 4,848,711, 4,848,712, 4,848,713 and 3,749,271 are fraudulent, the Registrations are subject to cancellation at any time pursuant to 15 U.S.C. § 1064(3).

65.    Plaintiff has been damaged, and will continue to be damaged, by the continued registration of the Registrations.

## FOURTH CLAIM FOR RELIEF

### (Cancellation of Registrations-Misrepresentations)

### (Against Defendants Twins US)

66.    Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations set forth in Paragraphs 1 through 48.

67.    In connection with its offering for sale, and sale of its products, Defendants utilize symbols, false designations of origin and false and misleading descriptions of fact related to the source of the goods being sold and their association with the Plaintiff.

68.    Defendants' use of symbols, false designations of origin and false and misleading descriptions of fact is likely to cause confusion and to deceive consumers as to the affiliation, connection or association of Defendants with Plaintiff.

69.    Defendants' conduct amounts to a "passing-off" of Defendants goods as goods originating from Plaintiff.

70.     The misrepresentations by Defendants as to the source of its goods mandate the cancellation of the Marks pursuant to 15 U.S.C. § 1064(3).

### FIFTH CLAIM FOR RELIEF

### (Unfair Competition (Cal. Bus. & Profs. Code §§ 17200, *et seq.*)

### (Against All Defendants)

71.     Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations set forth in Paragraphs 1 through 48.

72.     Defendants have engaged in unlawful business acts or practices by committing unlawful acts and practices as alleged herein, all in an effort to gain an unfair competitive advantage over Plaintiff.

73.     These unlawful business acts or practices were committed by infringing upon the Subject Designs and undertaking multiple acts which falsely and misleadingly draw an association between Plaintiff (and its products) and Defendants and the products they are selling.

74.     The acts and conduct of Defendants constitute unlawful and unfair competition as defined by California Business & Professions Code §§ 17200, *et seq.*

75.     Defendants' conduct constitutes unfair business acts and practices because their use of infringing copies of the Subject Designs constitutes an act of infringement undertaken while engaging in a business practice.

76.     Defendants' conduct constitutes fraudulent business acts and practices because Defendants has deceptively and unfairly marketed their products as being associated, sponsored, endorsed, connected or approved by Plaintiff when that is not the case.

77.     Defendants have improperly and unlawfully taken commercial advantage of Plaintiff's investment in its copyrighted works, its history and goodwill.  In light of Defendants' conduct, it would be inequitable to allow

Buchalter

BN 75562213v3

1 Defendants to retain the benefit of the funds obtained through the unauthorized and
2 unlawful use of that property.

3      78.    As a direct and proximate result of Defendants' wrongful acts, Plaintiff
4 has suffered, and will continue to suffer, damages to its business reputation and
5 goodwill. Defendants will continue, unless restrained, to use infringing copies of
6 the Subject Designs and to deceptively and unfairly market, advertise, and promote
7 its business and its (false) association with Plaintiff. This will cause irreparable
8 harm to Plaintiff, to which Plaintiff has no adequate remedy at law.

9      79.    Plaintiff is entitled to an injunction restraining Defendants, and those
10 acting in concert with Defendants, from engaging in further acts of unfair
11 competition.

**SIXTH CLAIM FOR RELIEF**

**(Breach of Contract; Specific Performance)**

**(Against Twins US and the Mechlings)**

15      80.    Plaintiff repeats, realleges and incorporates by reference, as though
16 fully set forth herein, the allegations set forth in Paragraphs 1through 33.

17      81.    On or before June 2010, Plaintiff manufactured and produced Muay
18 Thai boxing gloves, apparel and equipment to distributors and customers
19 throughout the world. Plaintiff's products were sold under its Twins Special and
20 King Professional brands.

21      82.    At or around that time, Plaintiff was interested in preserving,
22 protecting and continuing to grow its Twins Special and King Professional brands.
23 One of the ways Plaintiff understood to accomplish this was by securing trademark
24 registrations in jurisdictions around the world.

25      83.    It was around this time that Plaintiff had discussions with the
26 Mechlings regarding how to protect and grow the brands, and the role of
27 international trademark protection as a means for doing so.

28

BUCHALTER

BN 75562213v3

84.    On or about June 22, 2010, Plaintiff and the Mechlings signed two documents as part of their entry into an agreement (the "2010 Agreement").  The 2010 Agreement discusses the formation of a new entity (Defendant Twins US) to "own, hold, license and enforce" certain rights in the Twins Special and King Professional brands.

85.    The new entity was to be owned by Plaintiff (50%); Paveenvat Wongprasertkarn (10%); and the Mechlings (40%).

86.    Plaintiff was told by the Mechlings that the formation of Twins US, and the ownership structure set forth above, was necessary to properly carry out Plaintiff's objectives, that is, to continue to protect its brands through the use of trademark registration and enforcement.

87.    The 2010 Agreement contemplated that the Mechlings' interest in Twins US would not be permanent, and that over time their interest would revert to Plaintiff.  This is reflected in a Letter of Understanding that is part of the parties' 2010 Agreement.  The Letter of Understanding specifically provides that the Mechlings' interest in Twins US would be returned to Plaintiff "over time with an established and equitable process." The 2010 Agreement also contemplates that Twins US would never "replace Twins Thailand." However, the Mechlings now assert that the 2010 Agreement made Twins US replace Twins Thailand in all uses of intellectual property outside of Thailand, they have hypothecated and transferred rights they were obliged to return to Twins Thailand, and they have asserted that Twins Thailand is nothing more than a potential supplier to Twins US, not the parent company to whom all rights must revert.

88.    The Mechlings knew of the true intent of the parties with respect to the reversion of Mechlings' interest in Twins US to Plaintiff. Among other things, this intent is reflected by the contemporaneously executed Letter of Understanding, and the conduct of the parties acting in conformity with the true intent of the parties following the execution of the 2010 Agreement.

BUCHALTER

BN 75562213v3

89. The 2010 Agreement is a non-integrated agreement which Plaintiff believes was written by the Mechlings in English, knowing that the Plaintiff's representatives spoke and read limited English.

90. Plaintiff has an ongoing interest in preserving the Marks and other indicia of goodwill and value of the Twins and King Professional brands' products, designs and unique professional history, which cannot be reduced to a calculable financial loss.

91. Plaintiff's continued interest in the Twins and King Professional brands is unique, ongoing and perpetual such that monetary damages are an inadequate method of compensating Plaintiff for the loss of the benefit of the bargain contained in the 2010 Agreement.

92. By this claim, Plaintiff seeks an order of specific performance of the 2010 Agreement and Letter of Understanding, such that the temporary rights granted to the Mechlings revert to Plaintiff, and any international sales be properly sourced from Twins Thailand, not whatever third party is willing to supply whatever poor quality product the Mechlings might choose to order.

93. Plaintiff is entitled to the benefit of the 2010 bargain, including the realization of its future interest in the Twins and King Professional brands and Twins US due to Plaintiff's full proffer of consideration to Defendants under the 2010 Agreement and Letter of Understanding and the inadequacy of monetary damages in restoring rights in the property at issue.

94. Insofar as the relief sought by this cause of action relates to the continued exploitation of goods bearing the Marks, each of the Defendants' interests may be implicated by this cause of action.

**SEVENTH CLAIM FOR RELIEF**

**(Declaratory Relief)**

**(Against All Defendants)**

BUCHALTER

BN 75562213v3

95.     Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations set forth in Paragraphs 1 through 33.

96.     The 2010 Agreement sought to form a new entity (Defendant Twins US) to "own, hold, license and enforce" certain trademarks and intellectual property rights in the Twins Special and King Professional brands (as herein defined).

97.     The 2010 Agreement did not impair or preclude Plaintiff's ability to sell its products anywhere in the world.

98.     Not only does the 2010 Agreement not include any prohibition or limitation on Plaintiff's ability to sell goods that it manufactures, the 2010 Agreement states that the role of the new company (Twins Special, LLC) was separate and apart from Plaintiff's existing manufacturing and sales operations. Specifically, The Letter of Understanding provides that Twins Special, LLC would be developed "with a separate function, to secure trademarks and promote distribution rights all over the world, not to replace Twins Thailand."

99.     At the time the 2010 Agreement was entered into, it was the intent of the parties that Plaintiff would continue to manufacture products bearing the Marks and continue to sell them to its customers located around the world.

100.    The Parties acted in conformity with the stated intent of the 2010 Agreement that Twins Special, LLC would not replace the Plaintiff in terms of manufacturing and selling products bearing the Marks around the world. Defendants were aware that following the execution of the 2010 Agreement, Plaintiff continued to serve as the exclusive manufacturer of goods bearing the Marks, and sold those goods to its customers and distributors around the world, including to the Defendants.[1]

---

[1] Plaintiff is informed and believes, and on that basis alleges, that in February 2022, Defendants attempted to locate another supplier for goods bearing the Marks. See Paragraphs 25 and 26 herein.

**SECOND AMENDED COMPLAINT**

BUCHALTER

BN 75562213v3

101.   In February 2013, the Defendants convinced the Plaintiff to sign a second English language document which purports to transfer Plaintiff and Paveenvat Wongprasertkarn's interest in Twins Special, LLC to Chris Mechling and Nick Mechling.

102.   The 2013 Agreement did not address or alter Plaintiff's role as the exclusive manufacturer of goods bearing the Marks or its ability to sell goods bearing the Marks anywhere in the world.

103.   Following the 2013 Agreement, Plaintiff continued to serve as the exclusive manufacturer of goods bearing the Marks, and sold those goods to its customers and distributors around the world, including to the Defendants.

104.   The Defendants, by their actions in connection with their worldwide enforcement actions against Plaintiff's customers, have taken the position that the Plaintiff is precluded from selling products bearing the Marks outside of Thailand. Defendants actions against Plaintiff's customers has caused, and continues to cause, harm to Plaintiff, and causes uncertainty in the marketplace with respect to Plaintiff's ability to sell products bearing the Marks. Defendants have also taken actions rendering doubtful their return of their interest in Twins US under an "established and equitable process," and asserting the right to source goods from suppliers other than Twins Thailand.

105.   Plaintiff disputes Defendants' positions and contends that the parties' agreements allow Plaintiff to sell products bearing the Marks outside of Thailand, require the Mechlings to return their interest in Twins US, and require any goods sold by Twins US to be sourced from Plaintiff.

106.   An actual and justiciable controversy has arisen and now exists between Plaintiff and Defendants concerning whether the parties' agreements comport with Plaintiff or Defendant on these issues.

107.   In light of the facts alleged, the dispute between Plaintiff and Defendants is definite, immediate and substantial.

108. By this claim, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Plaintiff may sell products bearing the Marks outside of Thailand, that the Mechlings must return their interest in Twins US to Plaintiff, and that any goods sold by Twins US must be sourced from Plaintiff.

109. Plaintiff is entitled to a declaratory judgment of its rights, and the rights of Defendants, under 28 U.S.C. § 2201 in order to resolve the dispute existing between the parties and afford relief from the uncertainty and harm that Defendants' allegations have caused.

110. Insofar as the relief sought by this cause of action relates to the continued exploitation of goods bearing the Marks, each of the Defendants' interests may be implicated by this cause of action.

## EIGHTH CLAIM FOR RELIEF

### (Rescission)

### (Against Twins US and the Mechlings)

111. Plaintiff repeats, realleges and incorporates by reference, as though fully set forth herein, the allegations set forth in Paragraphs 1 through 33.

112. Insofar as the parties' agreements permit the Mechlings, and by extension the other Defendants, to source Thai boxing goods bearing the Marks from other suppliers, while Plaintiff continues to produce and sell different Thai goods bearing the Marks within Thai boxing's center of gravity, as Defendants contend, the parties' agreements or relevant parts thereof are unenforceable.

113. The existence of multiple channels through which goods bearing the same Marks are offered has created and will continue to create confusion among consumers. In addition to creating consumer confusion as to the true source of products purchased, this confusion also manifests itself in connection with reputation concerns, returns, exchanges, quality issues, shipping, billing questions, or any number of other inquiries consumers may have in the ordinary course of conducting business online.

Buchalter

BN 75562213v3

114.   The public has an interest in knowing with whom they are doing business and the true source of the products they are purchasing.

115.   To the extent the parties' agreements, and the 2013 Agreement in particular, are interpreted as permitting the aforementioned divergent channels through which products bearing the Marks are sold, that would cause confusion among consumers and uncertainly in the marketplace. Such confusion and uncertainty is contrary to the public interest.

116.   The confusion caused by the divergent channels through which products bearing the Marks were sold first arose in February 2022, when Defendants began sourcing products bearing the Marks from suppliers other than Plaintiff.

117.   Insofar as the relief sought by this cause of action relates to the continued exploitation of goods bearing the Marks, each of the Defendants' interests may be implicated by this cause of action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment in its favor providing the following relief:

1.     That Defendants, and each of them, be enjoined from offering for sale, selling, displaying, distributing or otherwise trafficking in any product that infringes upon Plaintiff's rights in the Subject Designs;

2.     That Plaintiff be awarded all profits and financial gains of Defendants resulting from the acts of infringement, in addition to all losses of Plaintiff, the exact sum of which will be proven at the time of trial, or if elected before final judgment, statutory damages pursuant to 17 U.S.C. §§ 101, *et seq.;*

3.     That the Court enter an injunction (pursuant to the Lanham Act) ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them, be enjoined from using a false designation of origin or description, including by words or other symbols, tending to falsely

describe or represent that Defendants' goods as being those of Plaintiff, of that they are affiliated, sponsored or approved by Plaintiff;

4.     That Defendants be required to account to Plaintiff for all of Plaintiffs' damages resulting from Defendants' false designations of origin and false and misleading descriptions of fact undertaken in connection with the offering for sale, sale, promotion, or marketing of goods under the Marks;

5.     That Defendants be required to account to Plaintiff for all profits resulting from Defendants' false designations of origin and false and misleading descriptions of fact undertaken in connection with the offering for sale, sale, promotion, or marketing of goods under the Marks;

6.     For an order directing the United States Patent and Trademark Office to cancel the Registrations based on the material misrepresentations made to the U.S. Patent and Trademark Office during the prosecution and renewal of the Marks;

7.     For an order directing the United States Patent and Trademark Office to cancel the Registrations based on the material misrepresentations made by the Defendants as to the origin of the goods being sold under the Marks;

8.     For specific performance of the 2010 Agreement to reflect the true intent of the parties that the Mechlings must return their interest in Twins US to Plaintiff, and that they must source any goods sold by Twins US from Plaintiff;

9.     That Plaintiff recover from Defendants the costs and disbursements of this action in addition to reasonable attorney and investigator fees and pre-judgment interest pursuant to 15 U.S.C. § 1117;

10.     That this Court grant a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Plaintiff may sell products bearing the Marks outside of Thailand, that the Mechlings must return their interest in Twins US to Plaintiff, and that any goods sold by Twins US must be sourced from Plaintiff;

11.     For the 2013 Agreement to be rescinded pursuant to California Civil Code §§ 1608, 1667, and 1689 *et seq.* as being prejudicial and contrary to the

public interest;

12. That Plaintiff be awarded punitive damages for Defendants' willful and malicious acts of making false designations of origin and false descriptions and representations so as to deter Defendants' future unlawful activities as complained of herein;

13. For Plaintiff's attorney's fees and the costs as permitted by law, specifically pursuant to applicable provisions of the Lanham Act and the Copyright Act;

14. That this Court retain jurisdiction over this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and enforcement of any Order entered in this action, for the modification of any Order, and for the enforcement or compliance therewith and for punishment of any violations thereof; and

15. For pre-judgment interest as allowed by law;

16. For an award of Plaintiff's costs of this action; and

17. Such other relief as this Court deems just and reasonable.

Dated: March 29, 2023          BUCHALTER
                               A Professional Corporation


                               By: _____/s/ Matthew L. Seror_____
                                   MATTHEW L. SEROR
                                   Attorneys for Plaintiff
                                   TWINS SPECIAL CO., LTD

BUCHALTER

BN 75562213v3

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues in the Complaint that are triable by jury.

Dated: March 29, 2023

BUCHALTER
A Professional Corporation

By: _____/s/ Matthew L. Seror_____
MATTHEW L. SEROR
Attorneys for Plaintiff
TWINS SPECIAL CO., LTD

BUCHALTER

BN 75562213v3