UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWINS SPECIAL CO., LTD.,<br><br>                   Plaintiff,<br><br>v.<br><br>TWINS SPECIAL, LLC, NICHOLAS MECHLING, an individual, CHRISTOPHER MECHLING, an individual, TWINS SPECIAL, an unincorporated general partnership, and DOES 1–10, inclusive,<br><br>                   Defendants. | Case No.: 23cv223-JO-DDL<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

On March 22, 2022, Plaintiff Twins Special Co., Ltd. ("Twins Thailand") filed a copyright infringement lawsuit against Defendants Nicholas and Christopher Mechling (the "Mechlings"), Twins Special, LLC ("Twins US"), and Twins Special, an unincorporated partnership ("Twins Special"). On March 8, 2023, Plaintiff sought a preliminary injunction to stop Defendants from infringing on Plaintiff's boxing-glove designs. Dkt. 70 ("Mot."). For the reasons described below, the Court denies the motion.

**I. BACKGROUND**

**A. The Parties' Dispute**

The parties' dispute centers on two agreements between Plaintiff and the Mechlings. Plaintiff, a boxing and martial arts equipment company based in Thailand, first partnered with the Mechlings in June 2010 to expand sales of their products to the United States.

Dkt. 78 ("SAC") ¶¶ 2, 18–19.  According to Plaintiff, the June 2010 agreement allowed the Mechlings to form Twins US, act as a distributor for Plaintiff's products in the U.S., and to register Plaintiff's trademarks in the U.S.  *Id.* ¶ 19.  Plaintiff then entered into a second agreement with the Mechlings in March 2013 that amended some of the prior agreement's terms, but provided that Plaintiff would continue to sell goods to Defendants for resale in the U.S.  *Id.* ¶¶ 20–21, 101–03.

The parties' business relationship continued into early 2019 and then began to sour. *Id.* ¶¶ 20–22.  Plaintiff alleges that, starting in 2020, Defendants began refusing to pay for the equipment Plaintiff sent them and wrongfully laying claim to the copyright in Plaintiff's designs.  *Id.* ¶¶ 21–23; Dkt. 77 ("Opp.") at 8–9.  As a result, Plaintiff ceased selling goods to Defendants.  *See* SAC ¶¶ 20–28.  Then, in 2022, Plaintiff discovered that Defendants were still selling equipment bearing Plaintiff's trademarks and copyrighted designs.  *Id.* ¶¶ 24–33.

Based on the facts above, Plaintiff filed suit against the Defendants and alleged the following claims: (1) copyright infringement; (2) false designation of origin; (3) fraud; (4) misrepresentation; (5) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (6) breach of contract; (7) declaratory relief; and (8) recission.  *See* SAC.

**B. Plaintiff's Motion for Preliminary Injunction**

On March 8, 2023, Plaintiff filed a motion for preliminary injunction to stop Defendants from selling boxing-gloves bearing Plaintiff's copyrighted designs.  *See* Mot. Plaintiff claims that Defendants are wrongfully copying and selling five of Plaintiff's boxing-glove designs.  *See id.* 4–7.  To support its motion, Plaintiff submits the declarations of two of its executives, including Plaintiff's managing director and head of international sales.  *See* Dkts. 70-1, 70-2.  These executives state that the five boxing-glove designs were created "[w]ithin the past few years . . . in Thailand for [Plaintiff's] products," and were first used and sold in Thailand.  *See* Dkt. 70-1 ¶ 4; Dkt. 70-2 ¶ 6; Mot. at 4.  Plaintiff further submits side-by-side comparisons of Plaintiff's designs and Defendants' allegedly

infringing products, along with evidence that Defendants' infringement is destroying Plaintiff's reputation and customer relationships. *See* Mot. at 5–10.

## II. LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A party can obtain a preliminary injunction by showing that (1) it is 'likely to succeed on the merits,' (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [its] favor,' and (4) 'an injunction is in the public interest.'" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (alteration in original) (quoting *Winter*, 555 U.S. at 20). "Likelihood of success on the merits is 'the most important' factor; if a movant fails to meet this 'threshold inquiry,' [the court] need not consider the other factors." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (quoting *Disney*, 869 F.3d at 856).

## III. DISCUSSION

To obtain a preliminary injunction, Plaintiff must meet its burden on all four factors outlined by the Supreme Court in *Winter*. *Winter*, 555 U.S. at 22. Because Plaintiff fails to meet its burden on the first *Winter* factor—likelihood of success on the merits—the Court denies Plaintiff's motion. *See Azar*, 911 F.3d at 575.

Plaintiff must show that it is likely to succeed on its copyright infringement claim to obtain a preliminary injunction, which includes a showing that Plaintiff owns the copyright in the boxing-glove designs. *See Winter*, 555 U.S. at 20. Copyright infringement requires Plaintiff to show that (1) it owns the copyright in the allegedly infringed material, and (2) Defendants violated one of Plaintiff's rights as a copyright owner. *Disney*, 869 F.3d at (noting that a plaintiff must "demonstrate that the alleged infringers violate[d] at least one

exclusive right granted to copyright holders under [the Copyright Act].").[1]  With respect to the first element, courts generally agree that a plaintiff must offer some "affirmative proof of legal or beneficial ownership." *Jim Marshall Photography, LLC v. John Varvatos of California*, 2013 WL 3339048, at *8 (N.D. Cal. June 28, 2013); *see also, e.g.*, *Lanard Toys Ltd. v. Novelty, Inc.*, 2007 WL 2439505, at *7 (C.D. Cal. Mar. 17, 2006) (declaration stating that plaintiff owned the trademark in the asserted works was insufficient to prove copyright ownership).  Accordingly, the Court turns to whether Plaintiff has submitted any affirmative proof of ownership.

Because the designs at issue were created in Thailand, the Court first addresses the threshold issue of whether Thai law governs the definition of ownership.  Ownership is determined under foreign law where, as here, the copyrighted work was created in a foreign country for a foreign company.  For copyright that originates outside of the United States,[2] U.S. copyright registration is not required, and "copyright ownership is decided according to the law of the country which has the closest relationship to the work[.]" *O'Reilly v. Valley Entm't, Inc.*, 2011 WL 13258234, at *6, 8 (N.D. Cal. Jan. 4, 2011) (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 84, 90–91 (2d Cir. 1998).  The country with the "closest relationship" will often be the country of the work's initial creation or the author's nationality.  *See Itar-Tass*, 153 F.3d at 90–91 (applying Russian law to determine copyright ownership of works "created by Russian nationals and first published in Russia").[3]  "[A] party relying on foreign law has an obligation to raise the

---

[1] The Copyright Act grants certain exclusive rights to copyright holders with respect to the copyrighted work, such as the right to make copies of, and the right to publicly display, the work. *See* 17 U.S.C. § 106.
[2] For copyright that originates in the United States, proof of copyright registration creates a rebuttable presumption of ownership in a valid copyright. *See, e.g.*, *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000); *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 944 (2022) (registration is a prerequisite to bringing an infringement suit under U.S. copyright law).
[3] *See generally Sadhu Singh Hamdad Tr. v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 583–84 (E.D.N.Y. 2007), for an explanation of the application of U.S. copyright law to foreign works.

specific legal issues and to provide the district court with the information needed to determine the meaning of the foreign law." *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018).  Here, because the boxing-glove designs were created in Thailand for a Thai company, Thailand has the closest relationship to the purported copyright.  Mot. at 4; Dkt. 70-2 ¶ 6; *see Itar-Tass*, 153 F.3d at 90–91.  Therefore, Thai law governs and determines the definition of "ownership."  *See id.*  Defendants do not appear to dispute this.  *See generally* Dkt. 77.  Although Plaintiff has not pointed to or submitted the Thai law that governs ownership, the Court will nonetheless consider whether Plaintiff is likely to succeed on the element of ownership under Thai law.[4]

Here, Plaintiff's failure to produce evidence of ownership renders it unlikely to succeed on the merits of its copyright infringement claim.  Under Thai law, the author of a work owns the copyright in it.  *See* Copyright Act BE 2537 (1994)[5] § 8; *see also* § 4 (defining author as the person who creates the work).  An employer does not automatically own the copyright in a work created by an employee.  *See id.* §§ 9–10.  It only does so under certain circumstances such as when there is a specific written agreement or when the employer "commissioned" the work.  *See id.*  Plaintiff—a company based in Thailand—generally argues that it owns the copyright in the boxing-glove designs but has submitted no evidence regarding the author of the designs and his or her relationship with Plaintiff.  Without this information, the Court is unable to determine whether the author transferred his or her copyright to Plaintiff by contract or created the designs for Plaintiff on commission.  Hence, the Court cannot determine whether Plaintiff owns the copyright in the designs.  Plaintiff's only evidence in this regard consists of statements from a company executive that the designs were created "in Thailand for [Plaintiff's] products" "[w]ithin

---

[4] Alternatively, under U.S. law, Plaintiff could not meet its burden to show ownership because the U.S. Copyright Act requires U.S. registration as a prerequisite to an infringement suit, and Plaintiff has no evidence of U.S. copyright registration.  *Unicolors*, 142 S. Ct. at 944; 17 U.S.C. § 411(a).

[5] Citations to the Copyright Act BE 2537 (1994) refer to the unofficial English translation of the Act located on Thailand's Department of Intellectual Property website: https://www.ipthailand.go.th /images /3534/2564 /Copyright/Copyright_Act_ENG.pdf.

the past few years." Dkt. 70-2 ¶ 6.  These vague statements do not aid the Court in identifying the original author of the designs and determining whether ownership of the designs passed to Plaintiff; accordingly, they are insufficient proof of Plaintiff's ownership. *See, e.g.*, *Lanard*, 2007 WL 2439505, at *7.  Based on the evidence currently before it, the Court cannot conclude that Plaintiff is likely to succeed in showing that it owns the rights to the boxing-glove designs in question.  Plaintiff may later prove that it actually owns the copyright in the designs but, at this stage and on this record, it has failed to establish any likelihood that it can do so.[6]  The Court thus finds that Plaintiff has failed to show it is likely to succeed on its copyright infringement claim and denies Plaintiff's motion for preliminary injunction.

## IV. CONCLUSION

For the reasons set out above, the Court DENIES Plaintiff's motion for preliminary injunction [Dkt. 70].

**IT IS SO ORDERED.**

Dated: April 14, 2023

　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　Hon. Jinsook Ohta
　　　　　　　　　　　　　　　　　　　United States District Judge

---

[6] The Court notes that the Ninth Circuit also applies a variant of *Winter's* four-factor test, under which "serious questions going to the merits and a balance of hardships that tip[] sharply towards the plaintiff can support issuance of a preliminary injunction," so long as all four *Winter* factors are met.  *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (finding that "serious questions" test requires a showing on all four *Winter* factors).  Because the Court has determined that Plaintiff has come nowhere close to meeting its burden on likelihood of success, Plaintiff's request for preliminary injunction also fails under this "serious questions" test.  *See, e.g.*, *Lopez v. Brewer*, 680 F.3d 1068, 1073 (9th Cir. 2012) ("Because the district court did not err in determining that Lopez failed to demonstrate a likelihood of success on the merits, it follows that Lopez also failed to raise serious questions going to the merits.").