UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWINS SPECIAL CO., LTD., Plaintiff, v. TWINS SPECIAL, LLC, et al., Defendants. | Case No.: 23-cv-223-JES-DDL<br>**ORDER:**<br>**(1) ADOPTING IN PART REPORT AND RECOMMENDATION REGARDING SANCTIONS;**<br>**(2) GRANTING IN PART MOTION FOR SANCTIONS;**<br>**(3) DENYING AS MOOT MOTION FOR CONTEMPT OF COURT; and**<br>**(4) DENYING AS MOOT MOTION FOR SANCTIONS AGAINST DEFENDANTS' COUNSEL**<br>**[ECF Nos. 249, 288, 322, 333]** |

Pending before the Court is a Report and Recommendation ("R&R") from Magistrate Judge David D. Leshner that recommends terminating sanctions against Defendants. ECF No. 333. Defendants filed objections to the R&R, and Plaintiff filed a reply. ECF Nos. 352, 360. After due consideration and for the reasons stated below, the Court **OVERRULES** the objections and **ADOPTS** Judge Leshner's R&R in part.

## I. BACKGROUND

Having independently reviewed the record in this case, the Court accepts the procedural history and facts as related in the Report and Recommendation finding them to be an accurate reflection of the record, **ADOPTS** them for the purposes of this order, and incorporates them by reference into this order. ECF No. 333 ("R&R") at 2-14.

## II. LEGAL STANDARD

A court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where objections are made to a specific finding or recommendation made by the magistrate judge, the district court shall review those portions of the report de novo. *Id.*; *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). The district court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III. DISCUSSION

The Report and Recommendation related to several motions pending before the Court. ECF Nos. 249, 288, and 322.

The first motion is a motion for contempt of court filed by Plaintiff. ECF No. 249. The R&R recommends denying this motion as moot. R&R at 37. Defendants do not object to this recommendation and Plaintiff did not file an objection. *See generally* ECF No. 352. Thus, the Court **ADOPTS** this ruling and **DENIES AS MOOT** the motion for contempt. ECF No. 249.

The third motion is a motion for sanctions against Defendants' counsel with regards to conduct before the Court at several hearings and also briefing that counsel filed. ECF No. 322. The R&R recommends denying this motion as moot. R&R at 38. Defendants do not object to this recommendation and Plaintiff did not file an objection. *See generally* ECF No. 352. Thus, the Court **ADOPTS** this ruling and **DENIES AS MOOT** the motion for sanctions against counsel. ECF No. 322.

The second motion is the motion for sanctions (ECF No. 288), and the entirety of the discussion section below will focus on this motion. Defendants raise several objections with regards to the R&R's recommendations as to this motion (ECF No. 352), and the Court will address each in turn below.

**A. Reliance on Forensic Examination Testimony**

Two of the witnesses that testified in the evidentiary hearing before Judge Leshner were forensic examiners Danny Thankachan and Jerry Bui. Defendants object to reliance on their testimony because they argue that they are not independent court-appointed experts under Federal Rule of Evidence 706. ECF No. 352 at 21-25. First, Defendants argue that the examiners are subject to Rule 706 because they were called to testify by the magistrate judge. *Id.* 22. Second, they argue that the examiners' impartiality were compromised because their report contained indicia that they were working for Plaintiff and because they engaged in many ex parte communications with Plaintiff. *Id.* at 22-24.

Plaintiff disagrees with Defendants' position. First, Plaintiff argues that the examiners are not subject to Rule 706 because they were not court appointed experts. To support this argument, it cites to prior briefing on the docket in the case. On August 7, 2024, the parties filed a status report with the Court regarding Defendants' compliance with a prior court order. ECF No. 228. Plaintiff submitted that it believed Defendants had failed to produce all relevant documents at that time, and asked the Court to "set an in-person evidentiary hearing at which both Mechlings should be ordered to appear with their electronic devices and the ability to search those devices and relevant emails in front of the Court (and a forensic vendor that Twins Thailand would retain)." ECF No. 228-1 at 3. Following the status reports, the Court held a discovery conference on August 16, 2024, after which the Court ordered the parties to "meet and confer regarding the protocol for a forensic examination of Defendants electronic devices and cloud-based accounts." ECF Nos. 229, 231. Pursuant to this order, Plaintiff's counsel proposed a draft report and protocol, suggesting that "[t]he forensic examination shall be conducted by an independent forensic examiner (the 'Examiner') appointed by and reporting to the Court." ECF No.

360-2, Ex. A at 6. In response to the proposal, Defendants stated that "this is not a joint motion for a forensic examiner," they did not "view the examiner as having to report to the court," and stated that they did not believe the court may contact the examiner independently. ECF No. 360-2, Ex. B.

Independent review of the record corroborates Plaintiff's contention. Neither party made a motion to, nor did the Court on its own volition, appoint an expert witness pursuant to Rule 706. Typically, appointments of expert witnesses under Rule 706 is a discretionary decision made by the court based on whether the aid of an expert could be useful in assisting it or the trier of fact to evaluate an issue raised in the case. *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999); *Gorton v. Todd*, 793 F. Supp. 2d 1171 (E.D. Cal. 2011) (identifying 4 factors courts may use to evaluate whether to appoint a Rule 706 expert witness); *Jackson v. Singer*, No. 2:25-CV-00727-MCS-AJR, 2026 WL 1046993, at *2 (C.D. Cal. Jan. 21, 2026) (noting that courts within the Ninth Circuit often employ the factors identified in *Gorton*).

Here, the Court's order putting in place the protocol contains no indicia suggesting it was appointing an expert pursuant to Rule 706; the order was titled "Order for Stipulation for Forensic Examination" and characterized the request in front of it as Plaintiff's request to "conduct a forensic examination of electronic devices and cloud-based accounts utilized by defendants." ECF No. 239. The litigation history that resulted in this order being issued was a series of discovery disputes raised with the Court that led to the forensic examination. *See* R&R at 3-6 (recounting the discovery hearings). Thus, the Court does not find that it is appropriate to consider Danny Thankachan and Jerry Bui as expert witnesses appointed under Rule 706.

In addition, Defendants do not provide any authority that requires the Court to rely *only* on a court-appointed expert when considering a motion for sanctions and that would have precluded Judge Leshner here from relying on the testimony of Danny Thankachan and Jerry Bui—as long as he found them credible. Defendants argue that "[t]he examiner is subject to Rule 706 because he was called to testify," citing to a case, *Fed. Trade Comm'n*

*v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204 (9th Cir. 2004) ("*FTC*"). However, upon review, the Court does not find the case to stand for that proposition as applied to the facts of this case. In *FTC*, the Ninth Circuit explained that the district court held a status conference on a motion for contempt. *Id.* at 1209. At the conference, one of the parties expressed a desire to present expert testimony. *Id.* Then, "[t]he district court indicated that it intended to appoint a third-party expert to aid the court" and said "court-appointed expert would review the work of both parties' experts, advise the court regarding how much discovery was needed, advise the court as to the proper methodology for examining the claims, and determine which of the parties' experts had presented the stronger scientific views." *Id.* Then, the district court issued an order appointing the expert, "stat[ing] that the expert is appointed 'to evaluate matters related to the science at issue, and to advise the Court with respect to his opinions related to the science." *Id.* The dispute in *FTC* was over what actual scientific issues were actually submitted to the expert for evaluation, so it had to be decided what portions of his testimony was covered by the appointment, under which he would be subject to Rule 706. *See id.* at 1209, 1213. This case is factually dissimilar to *FTC* because there is no indication in the record that the witnesses at issue here were ever appointed by the magistrate judge as court-appointed Rule 706 experts.

Having found that neither witness was subject to Rule 706, Defendants do not provide any other authority that suggests it was improper for the magistrate judge to rely on the witnesses' testimony if he found them credible. Accordingly, the Court **OVERRULES** Defendants' objections based on Rule 706.[1]

### B. Sanctions under Rule 37(e)

Next, Defendants argue that terminating sanctions are not appropriate under Rule 37(e). ECF No. 352 at 25-41. This argument is two-fold. First, Defendants argue that Rule 37(e) is the sole source of sanctions for alleged misconduct regarding lost electronically

---

[1] Plaintiff also raises a waiver argument as to the Rule 706 objection. ECF No. 360 at 10. Because the Court finds it more appropriate to address it on the merits, it declines to rule on the waiver issue.

stored information ("ESI"), and the magistrate judge committed legal error by relying on Rule 37(b) and its inherent authority. Second, the alleged misconduct here does not meet the Rule 37(e) requirements for terminating sanctions.

**1. Sources of Sanction Authority**

Rule 37(b)(2) empowers courts to impose sanctions for failures to comply with court orders, including "for not obeying a discovery order." Terminating sanctions are one of the permitted sanctions under this provision. Fed. R. Civ. P. 37(b)(2)(A)(v). Separately, courts are empowered under Rule 37(e) to impose sanctions for failure to preserve ESI, with terminating sanctions also authorized. Fed. R. Civ. P. 37(e). Finally, courts possess inherent power to impose sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991).

With this framework in mind, a threshold argument that Defendants make is that the magistrate judge "committed legal error in relying on 'inherent authority' and Rule 37(b) . . . . for conduct that falls under Rule 37(e)'s scope." ECF No. 352 at 27. Thus, Defendants appear to be arguing that where conduct is covered by Rule 37(e), it must be the sole source of authority for imposing sanctions, and the court cannot also rely on its inherent powers and Rule 37(b).

In imposing sanctions on Defendants, Judge Leshner discussed all three sources of power. First, he analyzed terminating sanctions under Rule 37(b) and inherent power under the same legal framework. R&R at 17-27. Under this section, he found that Defendants' conduct met the requisite test—their conduct was willful, related to the merits of the case, and met the five factor test of *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995). Second, he analyzed terminating sanctions under Rule 37(e). *Id.* at 27-31. Under Rule 37(e), he concluded that the rule's prerequisites were met and that Defendants acted with the requisite intent to support terminating sanctions.

Thus, Judge Leshner appeared to rely on all three sources to find that terminating sanctions were appropriate. Moreover, the conduct underlying each of the points of analysis is not the same. For discussion of sanctions under the Court's inherent powers and Rule 37(b), he relied on Defendants' action in not producing certain documents that were

responsive to discovery requests and that they were obliged to produce based on orders from the court resulting from discovery disputes. *See* R&R at 18-20. Some of the evidence relied upon in this section of the R&R was based on testimony of the forensic examiners, in particular with the evaluation of whether lesser sanctions would be sufficient and whether the court could believe Defendants' statements that they produced everything, which would be relevant to whether they complied with those other orders. For discussion of sanctions under Rule 37(e), he focused on evidence surrounding intentional wiping of devices before the forensic examination and whether such data could be retrieved such that ESI would be lost. R&R at 27-31. Thus, in this context, the Court does not find that the magistrate judge's discussion of inherent powers and Rule 37(b) is automatically legal error in reaching the conclusion given the separate and independent acts that underly the analysis. Thus, the Court **OVERRULES** the objection based on this argument.

**2. Rule 37(e) Sanctions**

Because Defendants object first to the Rule 37(e) sanctions, the Court will address them first. Rule 37(e) states as follows:

> "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > **(A)** presume that the lost information was unfavorable to the party;
> > >
> > > **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > **(C)** dismiss the action or enter a default judgment.

Defendants argue that the magistrate judge's Rule 37(e) analysis falls short in several ways. First, Defendants argue that Plaintiff did not show that ESI was "lost," that Defendants failed to take reasonable steps to preserve it, and that the ESI could not be restored. Second, Defendants argue that even if these were shown, the ESI was not central to Plaintiff's claims. Third, Defendants argue that terminating sanctions are not appropriate in any event because Plaintiff did not show that Defendants acted with the requisite intent. Finally, Defendants argue that other, less severe sanctions were available.

As a threshold issue, one common thread through many of these arguments is one of credibility. Defendants cite to their own testimony and submitted declarations to support their arguments that the ESI was not lost, was recoverable, and that they took all reasonable steps to preserve it. Thus, the Court first addresses the issue with credibility with the testimony. 28 U.S.C. § 636(b)(1) empowers the magistrate judge to conduct evidentiary hearings. The district court may accept a magistrate judge's credibility determination without conducting a de novo evidentiary hearing. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). However, if a district court rejects the credibility findings of the magistrate judge, a *de novo* hearing is required. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002).

Judge Leshner held an evidentiary hearing on the motion for sanctions on December 10-11, 2024. ECF Nos. 302, 304. During the hearings, he took testimony from the forensic examiners, Danny Thankachan and Jerry Bui, and Defendants Nicholas and Christopher Mechling. ECF Nos. 317, 330. Though the Court does not read the R&R as finding an overall adverse credibility finding against the Mechlings for all their statements, Judge Leshner does weigh the testimony of all those that testified at the hearing in each of the discussion sections below, and makes findings that generally go against the Mechlings testimony. The Court has independently reviewed the transcripts of the December 10 and 11 hearings (ECF Nos. 317, 330), and finds that the overall testimony generally supports the R&R findings, as will be detailed further below. Thus, the Court makes its ruling based

on review of the transcripts and does not find that it needs to further hold any evidentiary hearings.

**a. Rule 37(e) Requirements**

Defendants argue that the magistrate judge's findings as to the requirements under Rule 37(e) should be rejected. ECF No. 352 at 28-41.

**(1) Rule 37 Prerequisites**

As recited above, Rule 37 first requires a showing that ESI was "lost because a party failed to take reasonable steps to preserve it" and that it "cannot be restored or replaced through additional discovery."

As to the first prerequisite—that ESI is found to be "lost" because a party failed to reasonably preserve it, the R&R found this was met based on evidence that Defendants "wiped their iPhone and deleted files from other devices before turning them over to the examiner while the litigation was ongoing." R&R at 27. Specifically, Judge Leshner cited to testimony from the hearings and declarations submitted to him that evidenced that: (1) the devices were wiped before being handed over, (2) that the Mechlings gave misleading testimony regarding their use of those devices and never explained why the devices were wiped at that time, (3) that files were deleted before the devices were handed over, (4) that certain evidence has not yet been handed over (including Quickbooks and Signal Messaging files), (5) that at least one device that has relevant information has not yet been handed over; and (6) that the Mechlings "actively" chose to conceal the data, showing that they did not take reasonable steps to preserve it. *Id.* at 12-14.

Defendants argue that this conclusion is unsupported. ECF No. 352 at 28-30. Their argument in support of this contention is based on the Mechlings' own testimony from the hearings in front of Judge Leshner and declarations submitted in support of their objections. *Id.*

The Court has independently reviewed the hearing transcript as well as the declarations. Ultimately, the issue at the hearing and still at issue in the objections reduces to conflicting factual testimony. The Mechlings state that they "updated" their phones and

restored them from a backup source before turning them over for the examination and had turned everything over. ECF No. 352 at 28-29. The examiners, however, testified that the devices were wiped in their entirety and then restored from a backup, making them unable to tell if the backup was a complete representation of what had been on the devices. ECF No. 333 at 12. Given the totality of the evidence, Judge Leshner found the testimony of the examiners to be more credible and supported by the evidence over the testimony given by the Mechlings regarding the state of the devices that were handed over. For example, Judge Leshner pointed to discrepancies between what the forensic data showed and the testimony and representations the Mechlings made to the Court. *Id.* The Court's independent review of the testimony and evidence reaches the same conclusion. Thus, the Court finds that there is sufficient evidence that some ESI was "lost" and not turned over to the examiners during the forensic examination process. As to the requirement that the ESI must have been "lost" despite reasonable efforts to preserve it, Defendants argue that the fact they backed up the data shows that they made reasonable efforts to preserve it. This argument fails for the same reason as above, namely that it was not possible to tell if the backup was complete and rather the totality of the testimony showed that the Mechlings took actions to conceal information.

The second prerequisite is that the missing ESI "cannot be restored or replaced." Defendants argue that the conclusion in the R&R with regards to this requirement is also unsupported—largely relying on similar testimony from the Mechlings where they testified that they did not delete any files and that there was no concrete evidence of specific files that were missing. ECF No. 352 at 30-31. Judge Leshner rejected largely similar arguments made in the motion for sanctions. First, he pointed to testimony that strongly suggested there should have been responsive QuickBooks and Signal messages, and they were never discovered on any devices. R&R at 27-28; 13 (reviewing testimony from examiners that evidence indicated that QuickBook files were used for financial data and that iMessages found on the phone indicated that conversations were taken offline to Signal on purpose). This evidence, coupled with the Mechlings' testimony that they produced all the files they

had in their possession, suggests that these type of files at the very least could not be replaced. In addition, Judge Leshner relied on the Mechlings' lack of cooperation during the forensic examination process, which precluded the examiners from being able to compare the devices before and after they were wiped. *Id.* at 28 ("[T]he Court had no adequate assurance that Defendants have produced all relevant documents given their discovery misconduct in this case and the conclusions of the examiner."). Again, here, based on an independent review of the hearing testimony and evidence, the Court reaches the same conclusion, and finds that there is sufficient evidence that there is ESI that has been lost that cannot be retrieved or replaced.

**(2) Rule 37(e)(2)**

Having concluded that the prerequisites for sanctions under Rule 37(e) have been met, the Court must next consider whether the recommended sanction of termination is supported. Termination is a sanction contemplated under Rule 37(e)(2):

> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P 37(e)(2). Even if "intent to deprive" is found, a Court is not mandated to adopt any of the listed sanctions, "intentionally leav[ing] to the court's discretion exactly what measures are necessary." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 503 (C.D. Cal. 2022) (citation omitted). Intent to deprive involves the "willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024) (noting that mere negligence or gross negligence is not sufficient). The Ninth Circuit has further explained that "[b]ecause intent can rarely be shown directly, a district court may consider circumstantial evidence" and "[r]elevant considerations include the timing of destruction, affirmative steps taken to

delete evidence, and selective preservation." *Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 735 (9th Cir. 2024).

In the R&R, Judge Leshner found that the evidence established intent to deprive based on the evidence that the Mechlings wiped their iPhones days after the Court ordered them to turn over their devices to the forensic examiner. R&R at 29. Specifically, Judge Leshner pointed to the timing of the wiping of the phones, just a week after the Court's order for the examination, and that they "selectively" chose what responsive data to place back onto the devices. R&R at 29-30. Judge Leshner specifically rejected claims by the Mechlings that their behavior was in order to protect their privacy, finding that such a reason does not negate a finding of willfulness. *Id.* at 30-31.

In their objections, Defendants first argue that the characterization of "wiping" their phones is not accurate. ECF No. 352 at 36. They again point to statements made by the Mechlings that they restored the data, deleted no documents, and produced all responsive, non-privileged files originally contained on the devices. *Id.* The Court overrules this objection for the same reason as discussed above—based on the testimony of the forensic examiners and other evidence presented that conflicted with the representations the Mechlings made. *See RG Abrams Ins.*, 342 F.R.D. at 509 (rejecting credibility of testimony that parties trading in phone without preserving text messages on these was "happenstance" given timing of actions in context of litigation). Crediting the testimony of the forensic examiners and the other evidence in the record, the Court finds that sufficient intent can be inferred. *See Jones*, 95 F.4th at 736 (finding circumstantial evidence of intent sufficient where evidence included parties obtaining new phones to turn over for forensic examination shortly after being ordered to do so and never turning over the original phones).

Defendants also argue that, to the extent that any documents were not produced, it was due to imperfection of having to review and produce a high volume of documents. ECF No. 352 at 36-37. For example, Defendants argue that the forensic examiner testified that 13 responsive documents were not produced but that is a small number, within an

acceptable error rate of production based on accepted production methods, even where diligence is exercised. *Id.* The Court does not find this argument pertinent to the discussion under Rule 37(e). Under this section, the R&R focused more on the wiping of the phones before turning them over for the forensic examination and what electronic files are still missing from the devices. Furthermore, even if considering this argument on its merits, the production of certain documents does not negate intent. *See Jones*, 95 F.4th at 736 ("[P]roduction of some evidence does not excuse destruction of other relevant evidence" where evidence supports deletion).

Defendants also separately raise objections on lack of prejudice. ECF No. 352 at 31-34. This is a requirement under Rule 37(e)(1), but not under Rule 37(e)(2)—which is what the R&R was based on. *See Jones*, 95 F.4th at 736 ("Rule 37(e)(2) does not mention prejudice as a prerequisite to sanctions, including dismissal."); *RG Abrams*, 342 F.R.D. at 509 ("Plaintiffs' prejudice is not the question under the Rule 37(e)(2) analysis.").

**(3) Terminating Sanctions**

Having found that Plaintiff sufficiently established "intent" under Rule 37(e)(2), the Court next turns to whether terminating sanctions are appropriate. "To dismiss a case under Rule 37(e)(2), a district court need only find that the Rule 37(e) prerequisites are met, the spoliating party acted with the intent required under Rule 37(e)(2), and lesser sanctions are insufficient to address the loss of the ESI." *Jones*, 95 F.4th at 735. In *Jones*, the Ninth Circuit applied this standard rather than the standard for terminating sanctions under *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337 (9th Cir. 1995), which generally controls imposition of terminating sanctions. *Jones*, 95 F.4th at 735. Thus, the only factor that the Court needs to consider is whether "lesser sanctions are insufficient to address the loss of ESI."

Defendants raise several objections related to whether lesser sanctions would have sufficed. First, they argue that the forensic examinations already cured any of the prejudice Plaintiff may have suffered—essentially based on the testimony by the Mechlings that they have produced all the relevant documents during the examinations. ECF No. 352 at 38. The

Court overrules this objection for the same reasons as stated above, based on the testimony of the forensic examiners and other evidence discussed that instead show that ESI documents and devices are still being withheld. Furthermore, the Ninth Circuit in *Jones* had clarified that prejudice is not a perquisite to any sanctions, including dismissal. 85 F.4th at 736.

Defendants alternatively argue that a lesser sanction could be an issue or evidentiary sanction that can be placed into a Pretrial Order to limit any prejudice to Plaintiff. ECF No. 352 at 38-39. Defendants also suggest that there could be an adverse inference sanction that can be given to the jury. *Id.* at 39. Defendants also raise that monetary sanctions would have sufficed as well. *Id.* In conjunction with these arguments, Defendants object to Judge Leshner's discussions and conclusions on why alternative sanctions were not sufficient. *Id.* at 40.

Before turning to Defendants' objections, the Court first addresses how terminating sanctions are discussed in the R&R. In the R&R, Judge Leshner first addressed terminating sanctions under Rule 37(b) and the Court's inherent powers. R&R at 17-27. Terminating sanctions under these sources of authority are generally evaluated under the five factor test enunciated in *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995),[2] which the R&R applied. *Id.* at 21. The last of these factors considers the availability of less drastic sanctions. Judge Leshner then turned to terminating sanction under Rule 37(e). *Id.* at 27-31. This section of the R&R focused on the Rule 37(e) prerequisites and then intent under Rule 37(e)(2). *Id.* There does not appear to be a separate discussion of anything else under this section of the R&R, including discussion of the availability of lesser sanctions.

---

[2] The five factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

The recent Ninth Circuit *Jones* case has clarified that terminating sanctions under Rule 37(e)(2) are not evaluated under the *Anheuser-Busch* factors: "The *Anheuser-Busch* test generally controls the imposition of terminating sanctions, but we deal here with Rule 37(e)(2). To dismiss a case under Rule 37(e)(2), a district court need only find that the Rule 37(e) prerequisites are met, the spoliating party acted with the intent required under Rule 37(e)(2), and lesser sanctions are insufficient to address the loss of the ESI." 95 F.4th at 735. District courts have recognized this distinction post-*Jones*. *See, e.g.*, *Praecipio Consulting LLC, et. al. v. Howser et. al.*, No. 25-CV-02927-JST, 2026 WL 2280769, at *4 (N.D. Cal. July 30, 2026) ("In light of the clear language from *Jones* . . . , the Court declines to apply the *Anheuser-Busch* factors to Rule 37(e)(2) sanctions.").

In the section of the R&R focused on Rule 37(e), Judge Leshner did not separately analyze whether lesser sanctions are sufficient to address the loss of the ESI, but he did do such analysis during his discussion of the *Anheuser-Busch* factors for Rule 37(b), which includes the same factor of "the availability of less drastic sanctions." R&R at 23-27. While not under the discussion under Rule 37(e), several parts of this discussion are related to the ESI spoliation conduct. Specifically, Judge Leshner in part of the discussion focused on how the pattern of behavior by the Mechlings made it difficult for the Court to conduct trial with any assurances that the truth would be available. Specifically, Judge Leshner pointed to the testimony and evidence related to the forensic examination and the ESI:

- The examiner concluding that "Defendants' obstruction of the forensic inspection creates serious evidentiary gaps that do not permit [him] to definitively state the full impact of Defendants' apparent noncompliance;"

- The examiner concluding that Defendants were continuing to withhold documents that forensic data indicate they possessed, including: financial data including Quickbook files, encrypted messages using the Signal app, and entire devices;

- Evidence in the record that "the Mechlings lacked candor with the examiner" and citing specific examples of this in the declarations from the forensic examiners; and

- Evidence that the Mechlings provided multiple hard drives to an unnamed third party in Thailand and did not disclose this to the Court or Plaintiff until the December 10 hearing on the sanctions motion.

R&R at 26. Thus, Judge Leshner concluded that this behavior "prevented the Court from proceeding with any reasonable assurance that the truth would be available" and "less severe sanctions are not appropriate." *Id.* at 27.

This conclusion highlights the primary concern with the missing ESI—that it is not possible to determine and trust with any certainty the scope of the missing information. Unlike other cases where terminating sanctions were not warranted, the key difference is that the Court cannot speak with any confidence to the type of ESI and documents it may be missing. *Compare Jones v. Riot Hosp. Grp. LLC*, No. CV-17-04612-PHX-GMS, 2022 WL 3682031, at *12 (D. Ariz. Aug. 25, 2022), aff'd, 95 F.4th 730 (9th Cir. 2024) (terminating sanctions affirmed where party's conduct left court "with little confidence that a trial could be conducted with any reasonable assurance that the truth would be available") (cleaned up), *with Fast v. GoDaddy.com LLC*, 340 F.R.D. 326 (D. Ariz. 2022) (terminating sanctions found unwarranted where "lost evidence primarily appears to be related to Plaintiff's damages claims" so the court could determine that it was not central to liability in the case).

This conclusion is further bolstered by the course of conduct by Defendants leading up to and through the forensic examination. *See Jones*, 2022 WL 3682031, at *12-13 (considering history of violations of court orders leading up to the sanctions motion when deciding whether terminating sanctions were warranted and if lesser sanctions may be effective). As detailed in the factual background of the R&R, there was a series of escalating discovery issues that arose in front of Judge Leshner, where he held multiple discovery hearings and considered discovery and sanctions motions that led to orders compelling discovery. *See* ECF Nos. 129, 139, 152, 216. After the last order on a sanctions motion (ECF No. 216), Judge Leshner ordered status reports from the parties regarding compliance, where the parties disputed whether the Mechlings had complied with the order

compelling discovery, and held a status conference. ECF Nos. 228-30. This conference led to the forensic examination process.

Through the forensic examination process, there was evidence in the record of delays and issues with compliance. Judge Leshner issued the forensic examination order on September 4, 2024, ordering a status report by September 28. ECF No. 239. In relevant part, the order stated as follows:

> The forensic examination shall be conducted by an independent forensic examiner (the "Examiner") as authorized by the Court. The purpose of the Examiner's work is to search for and locate documents (if any) relevant to this proceeding that have not been previously produced.
>
> . . .
>
> All parties must cooperate promptly and fully with the Examiner, including by promptly meeting the Examiner (or his agents) for device turnover at locations reasonably close to the devices' locations, and promptly supplying information, passwords, and credentials required to access and decrypt data. Any party may move for appropriate sanctions for the willful obstruction of this Protocol, including hiding or destruction of data, in accordance with the undersigned's chambers rules.
>
> . . .
>
> Within one business day of the entry of this Order, the Examiner will send Defendants a Disclosure form. The form will require Defendants to 1) identify all relevant devices and accounts in their possession, custody or control ("Sources") and their physical locations; and 2) provide passwords and other necessary information to access data. Defendants and the Examiner will arrange turnover locations reasonably close to the devices and provide at least two proposed times for device turnover over the next two business days. It is contemplated that the turnover will occur in Bangkok, Thailand. The Examiner will image and return Source devices as soon as practical, but in no event longer than three business days following receipt of the Sources.

ECF No. 239. There is a dispute between the parties on the characterization of the events during the forensic examination process, but the following appear to not be factually disputed:

- Initial contact regarding the forensic examination did not occur until September 10, 2024 due to a delay on Plaintiff's end with issues with the original forensic examiner hired. R&R at 6; ECF No. 352-3 ¶ 22.

- The Mechlings did not respond to the disclosure form sent on September 10, but communicated with examiners and counsel over the next few days regarding the form due to their privacy and safety concerns. R&R at 6; ECF No. 352-3 ¶ 22.

- The forensic examiner attempted to set up a phone call with the Mechlings by sending a series of emails and meeting invitations. They spoke on the phone on September 19 and 20 to discuss issues regarding the form, but no written form was ever provided to the examiners. R&R at 6-7, ECF No. 352-3 ¶ 22.

- Judge Leshner held a status conference on September 20 regarding progress on the forensic examination. ECF No. 247. He ordered the parties to "work cooperatively and in good faith" with the forensic examination order and ordered further deadlines for a status update and hearing. *Id.* He also set a briefing schedule permitting Plaintiff to file a motion for sanctions based on lack of compliance with the examination order. *Id.*

- During the days following the status conference, the parties were in communication. However, it appears that no written disclosure form was turned over and due to schedule conflicts, the devices were never turned over before the Court-set deadline of September 30. R&R at 7-8, ECF No. 352-3 ¶ 24.

- Nicholas Mechling attended the September 30 hearing but Chris Mechling did not. Two cell phones and two Apple Mac Minis were turned over at that time, and passwords were provided. R&R at 8, ECF No. 352-3 ¶¶ 25-26.

- Due to the conduct during the forensic examination process and discoveries of the forensic examiners regarding missing documents and ESI (as detailed above in the previous Rule 37 sections), Plaintiff filed this motion.

While this conduct discussed above does not directly apply to Rule 37(e) sanctions, it is evidence of a documented history before the Court of previous discovery issues regarding compliance by Defendants. Such evidence can be considered by the Court when evaluating the appropriate sanction within its discretion, in particular with regards to a history of noncompliance and the effectiveness of alternative sanctions. Thus, the Court also finds that this underlying conduct supports terminating sanctions.

Thus, for the foregoing reasons, the Court **OVERRULES** Defendants' objections regarding sanctions under Rule 37(e) and finds that the imposition of terminating sanctions under Rule 37(e) is appropriate.

**C. Sanctions under Rule 37(b) and the Court's Inherent Authority**

The Report and Recommendation also recommended imposing terminating sanctions under Rule 37(b) and the Court's inherent authority. R&R at 17-27. Because the Court adopts the imposition of terminating sanction under Rule 37(e) as discussed above, it **DECLINES** to impose terminating sanctions alternatively under these other sources of authority.

However, the Report and Recommendation also does recommend monetary sanctions under Rule 37(b)(2)(C). R&R at 31-37. Thus, the Court will review this part of the Report and Recommendation. In evaluating sanctions under Rule 37(b)(2), the analysis that Judge Leshner undertook was for terminating sanctions. R&R at 17. Because the Court declines to impose terminating sanctions under this provision, the Court will instead analyze monetary sanctions pursuant to Rule 37(b)(2)(C) based on the appropriate standard.

**1. Monetary Sanctions under Rule 37(b)(2)**

Under Rule 37(b)(2), sanctions may be sought against a party for failing to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A). Sanctions may be imposed under Rule 37(b) when a party fails to comply with a court order regardless of the reasons. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958) ("Whatever its reasons, petitioner did not comply with the production order. Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance . . . ."). The rule further provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

First, the Court must determine whether Defendants failed to obey any discovery orders of this Court. In the original motion for sanctions, Plaintiff raises several previous court orders that required Defendants to produce documents. ECF No. 288-1 at 9. Of note are the following discovery orders that eventually led to the forensic examination:

- A November 20, 2023, order that required Defendants to "serve (a) amended responses to Plaintiff's RFPs, and (b) a privilege log" and to "serve all non-privileged documents responsive to Plaintiff's RFPs that are in Defendants' possession, control, or custody." ECF No. 129.

- February 9, 2024, order that required Defendants to "[p]roduce all responsive, nonprivileged documents, including but not limited to documents pertaining to Avalanche Company LLC." ECF No. 152 at 2.

- July 17, 2024, order that required Defendants to "produce all documents responsive to Plaintiff's requests for production that can be located following a diligent search and a reasonable inquiry. These responsive documents include, but are not limited to, all communications involving sub-licensees and all financial data for sales involving products with the TWINS SPECIAL, KING and KING PROFESSIONAL marks." ECF No. 216 at 2.

- September 4, 2024, order on the forensic examination requiring parties to "cooperate promptly and fully with the Examiner, including by promptly meeting the Examiner (or his agents) for device turnover at locations reasonably close to the devices' locations, and promptly supplying information, passwords, and credentials required to access and decrypt data." ECF No. 239 at 2. The order further specifically required the examiner to send Defendants a disclosure form for Defendants to: "1) identify all relevant devices and accounts in their possession, custody or control ("Sources") and their physical locations; and 2) provide passwords and other necessary information to access data." *Id.* at 2-3. It also required that "Defendants and the Examiner will arrange turnover locations reasonably close to the devices and provide at least two proposed times for device turnover over the next two business days." *Id.* at 3.

- September 23, 2024, order on the forensic examination after the Court's September 20 hearing regarding compliance with the prior order, requiring again that the "parties must work cooperatively and in good faith to comply with the Order." ECF No. 247 at 2. The order further set the September 30 status conference, requiring that "[t]he Mechlings, the Examiner and counsel for Plaintiff and Defendants must appear in person at the status conference, and the Mechlings must bring all electronic devices to the status conference." *Id.*

The Court has already discussed above the results of the forensic examination and its ultimate conclusion that there was sufficient evidence in the record to establish that certain documents and devices were withheld and never turned over as part of that examination. Thus, this is sufficient to form the basis of finding that there was violation of the three discovery orders preceding the forensic examination orders that ordered production of all documents responsive to Plaintiff's RFPs.

This same evidence supports the conclusion that there was a violation of the September 4 and 23 forensic examination orders too, which required Defendants at least to "identify all relevant devices and accounts in their possession, custody or control" and to turn them over. In addition, the Court has recounted the events between the Court's order requiring the forensic examination and the eventual turnover of the devices. *See supra* at 17-18. While there are disputes with regards to the underlying reasons for some of the actions the Mechlings took, the Court finds sufficient evidence to conclude that there was not full compliance with this order given the events and delays surrounding the disclosure form and the eventual turnover of the devices.

In their objections, Defendants mainly object to the imposition of any monetary sanctions based on their contention that Defendants did not violate the forensic examination order at all—namely, that they engaged in the collaborative process, turned over their devices and produced passwords, and produced all the responsive documents they had. ECF No. 352 at 46-47. Again, this objection is rooted in a difference in facts presented by Defendants through the Mechlings' declarations and testimony versus the testimony and evidence of the forensic examiners. For the same reasons that the Court has overruled this similar objection above, the Court **OVERRULES** it here.

**2. Amount of Monetary Sanctions**

Finding that there is sufficient evidence of a Rule 37(b) violation based on several discovery orders, the Court next turns to the amount of sanctions. In the Report and Recommendation, Judge Leshner recommended awarding monetary sanctions in part, the amount comprising of: (1) $370,808.16 in attorney's fees; (2) $50,000 in forensic

examination costs for costs that would not have been incurred but for the noncompliance; and (3) $14,806.15 in costs for court reporters at depositions and transcript orders for discovery related hearings. R&R at 31-37.

Defendants' primary objection as to the amount of sanctions is that the sanctions should be limited to only the $50,000 in forensic examination costs for costs that would not have been incurred but for the noncompliance. ECF No. 352 at 47-48. Specifically, Defendants argue that any costs related to efforts to secure an order compelling discovery or efforts preceding Defendants' failure to obey the forensic examination order cannot be included because this forensic examination order is the only order Rule 37(b) sanctions are based upon. *Id.*

First, the Court will **ADOPT** the imposition of monetary sanctions in the amount of $50,000 in forensic examination costs for costs that would not have been incurred but for the noncompliance. The parties do not appear to substantively dispute this amount.

As to attorneys' fees and other costs, the Court **OVERRULES** the objection that they cannot be awarded because monetary sanctions must be limited to efforts succeeding Defendants' failure to obey the forensic examination order. As detailed above, Plaintiff's original motion was based on potential violation of several court orders, including orders before the forensic examination order, and the Court has found sufficient evidence of violation of some of the earlier orders compelling discovery. Thus, monetary sanctions are not so limited as Defendants argue.

Turning to attorney's fees, Judge Leshner calculated the fees based on a lodestar calculation. R&R at 32-35. Under the lodestar calculation, the court calculates the lodestar amount by multiplying the hours reasonably expended by the reasonable hourly rate. *Kelly v. Wagner*, 822 F.3d 1085, 1099 (9th Cir. 2016). Then, the court may adjust the lodestar amount by other factors. *Id.*

First, as to reasonable hourly rates, Judge Leshner reviewed the amounts requested, and concluded that the rates requested (ranging from $715 to $285 for partners/associates and $189.28 for the paralegal) to be reasonable based on prevailing market rates and in the

range of fees already approved of by the Court on a previous motion for sanctions. *Id.* at 33. No objections were lodged by Defendants challenging the rates. *See generally* ECF No. 352. Having independently reviewed the declarations submitted by Plaintiff's counsel (ECF No. 288-3), the Court also finds that these rates are reasonable.

Second, as to the reasonable hours expended, Judge Leshner reviewed the hours requested based on Plaintiff's counsel's declaration. R&R at 34-35. As with the rates, Defendants did not lodge specific objections based on the hours requested. *See generally* ECF No. 352. The hours requested by Plaintiff were time-limited to the start of the dispute regarding RFPs and carried through the time period of the filing of this sanctions motion, and including the subsequent hearings and briefings. ECF Nos. 288-3, 321-1. Moreover, in the motion for sanctions itself, Defendants never lodged any specific arguments there either as to why the hours requested were not supported. Judge Leshner concluded that this failure to raise specific arguments therefore meant that Defendants did not meet their burden, as the party opposing the fee application, to submit evidence challenging the reasonableness of the hours charged. R&R at 34-35. Facing no such specific arguments in the objections either, the Court also adopts the recommendation that these hours be accepted by the Court. Thus, the Court will **ADOPT** the recommendation that attorney's fees be awarded in the amount of $370,808.16.[3]

Lastly, the Court turns to the costs requested. Like for the attorney's fees, Defendants lodge no specific objections as to the exact amount requested. *See generally* ECF No. 352. In the Report and Recommendation, the Court awarded the full amount requested of $14,806.15 in costs. R&R at 35. As noted above, the declarations of Plaintiff's counsel relied upon by Judge Leshner was limited to the start of the dispute regarding RFPs and carried through the time period of the filing of this sanctions motion, and including the

---

[3] As to the second step of the lodestar calculation regarding any upward or downward adjustment of the lodestar amount, the Report and Recommendation did not include any such adjustment and neither parties raises it in objections. Thus, the Court will not make any further adjustments to this amount.

hearings. *See* ECF Nos. 288-3, 321-1. Thus, presented with no specific objections to disturb this request, the Court will also **ADOPT** the recommendation that costs be awarded in the amount of $14,806.15.

Thus, in totality, the Court will impose monetary sanctions in the amount of $50,000+$370,808.16+$14,806.15 = $435,614.31.

## IV. CONCLUSION

For the reasons discussed above, the Court **OVERRULES** Defendants' objections and **ADOPTS IN PART** the report and recommendation, ruling as follows:

1. The Court **GRANTS** the motion for terminating sanctions (ECF No. 288) based on Rule 37(e) and **GRANTS IN PART** the request for monetary sanctions under Rule 37(b)(2) in the amount of $435,614.31.
2. In light of the ruling on the motion for sanctions, the Court **DENIES AS MOOT** Plaintiff's motion for contempt of court and Plaintiff's motion for sanctions against Defendants' counsel.[4] ECF Nos. 249, 322.

The Court also **ORDERS** Plaintiff to submit a proposed judgment **within 14 days** of this order. Defendants may submit a response to the proposed judgment **7 days** after the proposed judgment.

**IT IS SO ORDERED.**

Dated: September 28, 2026

Honorable James E. Simmons Jr.
United States District Judge

[4] This ruling is based on the imposition of terminating sanctions under other authority and should not be interpreted as any judgment on the substantive arguments therein.